[No. 15318. Department Two. August 12, 1919.]

JOHN A. LUND, *Respondent*, v. GRIFFITHS & SPRAGUE STEVEDORING COMPANY, *Appellant*, COASTWISE STEAMSHIP AND BARGE COMPANY, INCORPORATED, *Defendant*.[1]

MASTER AND SERVANT (20-1) — INJURY TO SERVANT — WORKMEN'S COMPENSATION ACT—MARITIME WORK OF STEVEDORE. The amendment to the Federal Judiciary act of October 17, 1917 (U. S. Comp. St., §§ 991, 1233) saving to claimants in all civil causes of admiralty and maritime jurisdiction in the Federal courts the rights and remedies under the workmen's compensation law of any state, did not have the effect of establishing the jurisdiction of the state workmen's compensation act over personal injuries to workmen occurring on board ships, since the state act does not afford a remedy to such workmen or entitle the commission to collect premiums from employers therefor.

SAME (124)—INJURIES TO SERVANT—PLEADING—COMPLAINT—NEGLIGENCE ON PART OF MASTER—PLEADING NOTICE OF DEFECT IN MACHINE. In an action for personal injuries to a stevedore resulting from

[1]Reported in 183 Pac. 123.

structural defects in the winches, making them unsuitable for the work, the master's knowledge need not be alleged in the complaint or directly proved, but may be inferred where they were discoverable either by inspection or by putting them into actual service.

SAME (129)—PLEADING—VARIANCE—DEFECTS IN MACHINE—EFFECT OF VARIANCE. It is not a fatal variance that the complaint alleged that winches were defective in having insufficient play in the eccentrics, making them difficult of control, and the proof showed that the throttle valves were intended to be described and were responsible for the difficulty of control; since under Rem. Code, § 299, a variance is immaterial unless it actually misled the party to his prejudice, and there was a failure to prove the allegation "in its entire scope and meaning."

SAME (155)—EVIDENCE—QUESTION FOR JURY AS TO MASTER'S NEGLIGENCE—TOOLS AND APPLIANCES—UNSAFETY OF WINCHES ON VESSEL. Whether winches were unsafe is a question for the jury where, although the evidence was conflicting, there was testimony that they were "touchy" and unsafe in the hands of any driver.

SAME (184)—ACTIONS FOR INJURIES TO THIRD PERSONS—VERDICT IN FAVOR OF THIRD PERSON—RELEASE OF MASTER. In a stevedore's action against the owner of a ship and the stevedoring company employing him, for injuries sustained through the use of defective winches on the ship, a verdict exonerating the ship owner does not exonerate the plaintiff's employer, where the latter undertook to load the boat employing its own means, even if the verdict was inconsistent and subject to some other form of relief.

TRIAL (101)—INSTRUCTIONS ALREADY GIVEN—REQUESTS. It is not error to refuse an instruction in the language requested where the court in its own language gave it in substance.

DAMAGES (84)—EXCESSIVENESS—INJURY TO LEG. A verdict for $10,300, reduced by the court to $6,300, for injuries sustained by a stevedore is not excessive where his leg was severely crushed and permanently injured and he was unfitted for his occupation.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 6, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a stevedore. Affirmed.

*Grinstead & Laube,* for appellant.
*Walter S. Fulton,* for respondent.

Fullerton, J.—The respondent was injured while in the employ of the appellant working as a stevedore in the hold of the steamship Anyox. The vessel named was the property of the defendant Coastwise Steamship and Barge Company, Inc., who was using it in the lumber trade. Being desirous of taking on a cargo of lumber at Seattle, it engaged the appellant, a stevedoring company, to load the vessel. A part of the equipment of the vessel consisted of two steam winches, sufficiently close together to be operated by a single winch driver. The winches were controlled by levers, so arranged that the winch driver could stand between them and operate a winch with each hand. When on center, the ends of the levers intended to be gripped by the hands reached to the height of the hands of an ordinary man while standing, and the movement of a particular lever up or down caused the winch which it controlled to haul in or play out the line to which the lumber was attached while being carried from the wharf to the vessel.

In loading the vessel at the time in question, it was found necessary to use the winches. As a winch driver, the appellants employed one A. B. Anderson. Anderson was a winch driver of long experience, and no question is raised as to his competency. The accident giving rise to the injury to the respondent happened when the first winch load of lumber was brought on board the vessel. This consisted of a square piece of timber weighing several hundred pounds. It was carried successfully from its place on the wharf to the deck of the vessel and lowered partially into the hold. Just before being dropped on the floor of the vessel, Anderson in some manner lost control of the winches. He was unable to make them operate in unison, the result was that the timber swung crosswise of the hold. In one of its vibrations, it caught the respondent,

crushing his leg against some part of the vessel, seriously and permanently injuring it.

The respondent brought this action against both the owner of the vessel and the appellant who was employed to load it.   As grounds of negligence, he charged that the winches were defective in two particulars: first, that the winches were not adapted to the weight of the timber then being loaded in that they were too touchy because of having an eccentric with only one quarter inch play when, to have been reasonably safe, the eccentric should have had at least an inch play; and second, that the defendants were negligent and careless in the maintenance of the winches in that they had thereon spiral springs intended to keep the levers thereof on center, but which were so constructed as to prevent the levers from being easily and readily operated by the driver of the winches, thereby making it impossible for such driver to control the winches; further alleging that the injury to him was the result of the negligence of the defendants in the respects mentioned.

The defendants first demurred to the complaint; and after the overruling thereof by the trial court, answered, denying generally the allegations of negligence contained in the complaint, and pleading affirmatively contributory negligence and that the accident was the result of negligence of a fellow servant of the respondent.   The issues were submitted to the jury against both of the defendants and resulted in a finding in favor of the defendant owner, and a finding against the appellant in the sum of ten thousand three hundred dollars.   The trial court, on the contention that the verdict was excessive, offered the respondent the alternative of accepting a judgment for six thousand three hundred dollars or of submitting to a new trial.   The respondent accepted the first branch of the

alternative proposed, and judgment against the appellant was entered in his favor in the last sum named. The appeal is from the judgment entered.

The appellant first assigns error on the order of the trial court overruling its demurrer to the complaint. Among the grounds of demurrer, was the ground of want of jurisdiction over the subject-matter of the action, the more particular contention being that such subject-matter was withdrawn from private controversy by the workmen's compensation act. It is conceded that this court held in the case of *Shaughnessy v. Northland Steamship Co.*, 94 Wash. 325, 162 Pac. 546, Ann. Cas. 1918B 655, that the act referred to does not bar an action of this sort, founded as it is upon a maritime tort, but it is contended that the decision is rendered inoperative by the amendment to the Federal judiciary act of October 17, 1917. U. S. Comp. St., §§ 991, 1233. The act prior to its amendment vested in the Federal courts jurisdiction over "all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common law remedy where the common law is competent to give it." The amendment added to the saving clause the sentence: "and to claimants the rights and remedies under the workmen's compensation law of any state." The argument is that the effect of the amendment is to establish the jurisdiction of state workmen's compensation acts over personal injuries to workmen occurring on board ships; and that, since our act makes the remedy exclusive in all instances where jurisdiction is given, it must follow that an injured workman cannot in this state resort to any other remedy.

But it will be observed that the Federal act does not purport to abolish the admiralty or common law remedies for maritime injuries. On the contrary, it still maintains these remedies in favor of an injured em-

ployee, and gives to him the additional remedy of the state compensation acts where such acts afford a remedy. But it is plain, we think, that our workmen's compensation act does not afford such a remedy. As we held in the case cited, the act was intended to be mutual in its operation, protecting employers of labor in certain enumerated employments, on the one side, from actions in courts of law for personal injuries, and giving to a workman injured while engaged in the numerated employments, on the other, a certain and sure relief for his injury, regardless of the manner in which the injury occurred or to whose fault it might be charged, and was intended to operate only in those instances which are within the exclusive legislative control of the state. It must follow, we think, that the amendment cited has no effect upon the workmen's compensation act of this state, or the remedies afforded thereby, however effective it may be in other states having a different system for relief in this regard. In the case of *Puget Sound Bridge & Dredging Co. v. Industrial Insurance Commission,* 105 Wash. 272, 177 Pac. 788, decided since this appeal was taken, we hold that the commission was not entitled to collect premiums for the industrial fund for the employees of the company whose work was confined exclusively to the company's dredges; this for the reason that the workmen's compensation act did not afford them protection against actions for injuries received by such workmen. In the course of the opinion, the amendment to the Federal judiciary act was noticed and it was held that it did not change the rule as formerly announced by this court. The case is in point on the question here presented. If the act does not so far operate against employers as to compel them to pay the premiums required by the act intended for the

benefit of the injured workmen, clearly it will not protect them from the remedies the act leaves open to the injured workmen.  It follows that the trial court correctly determined that the action will lie.

A second ground of demurrer was that the complaint did not state facts sufficient to constitute a cause of action.  In this court it is urged that the complaint is fatally defective because it is not alleged that the appellant had notice or knowledge of the defect in the winches.  But the allegation was unnecessary.  A distinction exists in this respect between instances where the machinery is defective when furnished for use, and machinery which is in good condition when furnished but afterwards, by use or other causes, becomes defective while in the hands of the servant.  It being the positive duty of the master to furnish his servants with reasonably safe appliances with which to do their work, it is sufficient, in an action to recover for a breach of this primary duty, to allege facts which show the duty and its breach; it is not necessary to go farther and specifically allege that the master knew, or by reasonable diligence would have known, that he had breached his duty.  As we said in *McLeod v. Chicago, Milwaukee & P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749:

"When the act is such that it must, in the nature of things, make unsafe the servant's place of work, knowledge of that fact must of necessity be inferred from pleading the act.  The principle contended for by appellant arises more frequently in connection with the duty to inspect and remedy defects than in any other class of cases.  It would seem to be an application of a sound principle in an unsound way to invoke this rule strictly in a case such as here presented. Even where the primary negligence is the failure to inspect, provide and maintain a safe place, the knowledge of the master, when it may be inferred from the facts pleaded, is sufficiently pleaded as against de-

murrer. *Gibson v. Chicago, M. & P. S. R. Co.*, 61 Wash. 639, 112 Pac. 919. 'Such knowledge by the defendant is generally regarded as sufficiently averred by an allegation that the defendant negligently permitted appliances to become defective and negligently suffered them to remain in a defective condition.' 6 Thompson, Negligence, p. 551, § 7529.''

The principle is illustrated also by the case of *Kidwell v. Houston & G. N. R. Co.*, 3 Woods (U. S. Cir. Ct.) 313, where it was held that a servant of a railway company, suing for injuries caused by a defective car, must allege either that the car was defective when placed on the track, or that it afterwards became defective and that the railroad company had knowledge thereof.

It is next contended that there was no proof that the appellant had notice that the winches were defective. The proofs followed the allegations of the complaint. There was evidence which tended to show structural defects in the winches, defects which if not discoverable by mere inspection were readily discoverable by putting the winches into actual service. It was the province of the jury to believe this evidence, and if they did so believe it they were warranted in believing that the appellant could, by the exercise of reasonable diligence, have known of the defects.

''Where the defect in the appliance is shown to be structural and is of such a character as renders it unsafe it may be inferred that the employer was aware of the defect and an employee who has been injured by such an appliance need not show that the master knew that it was defective.'' 26 Cyc. 1144.

In the complaint it is alleged that one of the defects in the winches was insufficient play in the eccentrics, making the winches difficult of control and thereby rendering them unsafe. The witnesses for the respondent, including the winch driver himself, described the de-

fect as a defect in the eccentric, while it appears elsewhere in their testimony that another part of the machine, namely, the throttle valves, was intended to be described. These, according to the witnesses, were so constructed that a too slight movement of the levers would cause the winches to reverse, making it difficult for the driver of the winches to control them. It is urged that this is such a fatal variance between the allegations and the proofs as to entitle the appellant to a reversal. But we cannot so conclude. A mere variance between the allegations and the proofs is not sufficient in all instances to warrant a reversal. By the express provisions of the code (Rem. Code, § 299), a variance between the allegations and the proofs is immaterial unless it shall have actually misled the adverse party to his prejudice in maintaining his defense upon the merits. It is only where there is a failure to prove the allegations of the complaint "in its entire scope and meaning" (Id., § 301), that such a result follows. In this instance, there was no contention in the court below that the defendant was misled to his prejudice by this difference between the allegations and the proofs, and certainly it is not a failure to prove a cause of action in its entire scope and meaning to allege that an appliance is defective because of a defect in one of its parts and prove that it is defective because of a defect in a part other than the part alleged.

A further contention in this connection is that there is no evidence showing that the winches were defective. The evidence on this question we have examined with some care, and we are convinced that the weight of the evidence is with the conclusion that the winches were not defective; that, while they differed somewhat in construction from winches in more common use, they were reasonably safe when operated by a winch

driver familiar with these differences; and further, that the injury to the respondent in this instance was caused rather by the driver's unfamiliarity with the working of the winches than by any defect, structural or otherwise, in the winches themselves. But there is evidence the other way. Experienced winch drivers testified in substance that these differences were radical, rendering the winches "touchy" and unsafe in the hands of any driver, however skilled or familiar with them he might be. There was, therefore, such a conflict in the evidence as to make the question one for the jury to determine, and since they determined the conflict in favor of the respondent, this court, notwithstanding it may believe they were in error, has no authority to interfere.

Another contention is that the verdict in favor of the owner of the vessel operates as a release of the appellant. It is argued that the appellant was a mere agent of the owner for the loading of the boat, and is not liable while it was acting within the scope of the agency unless the principal is also liable. It is undoubtedly the rule that an intermediate servant is not liable for a negligent injury to a subordinate servant where he is guilty of no independent wrong and is but carrying out the directions of the common master. But the record here shows something more than this. The appellant was an independent contractor. Its contract was entire. It undertook to load the boat employing its own means and its own servants. For any negligent injury to its servants, it is liable regardless of the question whether another party may be also liable. It is true that the winches which caused the particular injury were a part of the equipment of the boat, in place when the appellant entered into its contract. But they were, nevertheless, as between the appellant and its servants, appliances furnished by the appellant to

its servants with which to work, and the appellant owed the servant the same duty to see that they were in proper condition that it would have owed them had it procured the winches from some other source. It may be true, also, that the verdict of the jury, in the light of the evidence, is inconsistent—that there is no apparent reason why they should have found against one defendant and in favor of the other; but this, while it might be grounds for some other form of relief, is not a ground for holding the verdict equivalent to a verdict in favor of both defendants.

The appellant requested an instruction to the jury touching the degree of care required of a master when furnishing appliances for the use of its servants. The court did not give the instruction in the language of the appellant, but gave it in substance in its own language. This was sufficient. In this state, the trial court may give a requested instruction in his own language however appropriate may be the language in which the request is framed. We are aware that the appellant contends that it was excluded from the benefit of the instruction as it was limited in terms to its codefendant. As the instruction given is quoted in the appellant's brief, it is faulty in the respect claimed, but an examination of the instruction, as certified to this court, shows that the appellant has not accurately quoted it. The concluding clause of the instruction as the appellant quotes it reads: "then the steamship company would not be chargeable with negligence," whereas the certified copy reads: "then neither the steamship company nor the stevedore company would be chargeable with negligence."

Finally it is contended that the verdict, even as reduced by the trial court, is excessive. The amount of the recovery allowed is substantial, but the respondent's injuries were severe and permanent. The timber

struck the respondent's leg at the juncture of the middle and lower thirds. The bones were crushed and splintered and a jagged hole made in the flesh through which the bones protruded. Great difficulty was had in getting the bones to unite, and when they did unite the leg was crooked, so much so that the weight of the body no longer rests in a vertical direction upon the leg, causing pain in ankle joint when use is made of it. The respondent was a stevedore by occupation when injured, capable of earning and actually earning substantial wages. His injury unfits him for this occupation, and he must seek some other means of earning a livelihood. In the light of these conditions, we cannot think a further reduction in the recovery would be justified.

The judgment is affirmed.

HOLCOMB, C. J., PARKER, and MOUNT, JJ., concur.