[No. 18030.    Department Two.    July 3, 1923.]

ANNA VOGLER ZAHLER, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—PERSONS ENTITLED—AWARD FOR INJURIES TO HUSBAND. The widow is not entitled to an industrial insurance award made to an injured husband for a permanent partial disability in a specified sum, but not consummated by payment to him in his lifetime, under Rem. Comp. Stat., § 7679, which provides that each workman who shall be injured "or his family or dependents in case of death of the workman," shall receive compensation according to the schedule provided; since the quoted words were intended to have reference only to death claims contained in the schedule.

SAME (20-2) — EXTRA-HAZARDOUS EMPLOYMENT — SHIPBUILDING — FEDERAL LIABILITY ACT—ADMIRALTY JURISDICTION. The workmen's compensation act extends to employment in completing a ship after it has been launched and while it is resting in the navigable waters of the United States; in view of Rem. Comp. Stat., § 7674, which includes "shipbuilding" as an extra-hazardous employment, within the scope of the industrial insurance act; since such employment is not exclusively within Federal Admiralty jurisdiction or general maritime law.

TOLMAN and PEMBERTON, JJ., dissent.

Appeal from a judgment of the superior court for King county, Hall, J., entered April 7, 1923, reversing two orders of the department of labor and industries rejecting claims for compensation under the workmen's compensation act. Reversed as to one order; affirmed as to the other.

*The Attorney General,* for appellant.

*Alfred J. Schweppe,* for respondent.

[1]Reported in 217 Pac. 55.

PARKER, J.—This is an appeal from a judgment of the superior court for King county, reversing two orders of the Department of Labor and Industries rejecting two claims of Anna Vogler Zahler, formerly Anna Vogler, individually and as guardian of her minor children. One claim is for a permanent partial disability suffered by her former husband, Joseph Vogler, while engaged in an extra hazardous employment, upon which an award was made to him by the department, but not consummated by payment thereof prior to his death. The other claim is for the death of her former husband, Joseph Vogler, occurring in the course of his employment which was extra hazardous. She appealed to the superior court, wherein judgment was rendered reversing both orders of the department, and directing awards to be made as prayed for. The department thereupon appealed from this disposition of the case to this court. Mrs. Vogler married again after the death of her former husband, Joseph Vogler, which accounts for her name now being Anna Vogler Zahler. We shall hereafter refer to her as respondent and to the department as appellant.

The controlling facts with reference to the permanent partial disability claim are not in dispute and may be summarized as follows: On November 27, 1918, while working in an extra hazardous employment and under the protection of our workmen's compensation law, Vogler suffered an injury to one of his eyes. On August 28, 1919, appellant made to him an award as for permanent partial disability in the sum of six hundred dollars. On August 30, 1919, after the award was so made, but before a warrant was issued to Vogler in payment thereof, he was killed while in the course of his employment. He left surviving him his widow, this respondent, and their two minor children. Thereafter

respondent, in behalf of herself and children, asked appellant to make payment of the six hundred dollars award to her, which it refused to do, resting its ruling on the ground that under our workmen's compensation law, the right to the unpaid award did not survive to Vogler's widow or children, and that that law does not provide for the making of any award to workmen's widows or children for an injury or disability, short of death, suffered by them.

The controlling facts with reference to the death claim are not in dispute, and may be summarized as follows: At all times in question, Joseph Vogler was a carpenter employed by the Patterson-McDonald Shipbuilding Company, at Seattle, which company was regularly contributing to the accident fund under our workmen's compensation law. On August 30, 1919, Vogler was working as a carpenter in the construction of a ship which the shipbuilding company was constructing at its shipyards in Seattle, under a contract therefor with the United States Shipping Board Emergency Fleet Corporation; which ship, though unfinished, had just been launched and was floating in the navigable waters of Puget Sound. On that day, while so working on the ship, Vogler was killed by falling into the hold thereof. He left surviving him this respondent, his widow, and their two minor children. Thereafter respondent made claim to appellant for compensation in behalf of herself and children for the death of her husband under the workmen's compensation law. This claim was rejected and disallowed by appellant, resting its ruling upon the ground that Vogler's death occurred outside of the scope and jurisdiction of our workmen's compensation law and within the exclusive scope and jurisdiction of admiralty jurisdiction and maritime law.

We first inquire as to respondent's rights with reference to her claim to the six hundred dollars award made to Vogler, her former husband, and not consummated by payment before his death, for his permanent partial disability.  It is here conceded by her counsel that she has no right to that award by virtue of its surviving to her as heir or personal representative of Vogler upon his death; that is, that she has no right to that award by virtue of its having become an asset of his estate.  It was, in effect, so determined by our decision in *Ray v. Industrial Ins. Comm.*, 99 Wash. 176, 168 Pac. 1121, L. R. A. 1918F 561, construing § 10 of the workmen's compensation law; Laws of 1911, p. 364; in force at the time Vogler was injured.

It is, however, here contended in respondent's behalf that, by the terms of our workmen's compensation law in force at the time Vogler was injured, she is entitled to the six hundred dollars award made to him and not consummated by payment prior to his death.  Our decision in the *Ray* case had to do only with the claim of an administrator of a deceased workman who left no heirs and no estate, other than his unpaid claim against the accident fund for a permanent partial disability of the same nature as the one here involved; and left debts approximating some four hundred dollars, for the payment of which his estate was liable.  So there was not drawn in question in that case any claimed right of the workman's family or dependents under the terms of our workmen's compensation law, but only the question of whether or not Ray's claim against the accident fund survived as a part of his estate to his personal representative, to wit, his administrator.

The terms of the law, as existing at the time Vogler was injured, which, it is conceded, are controlling in

our present inquiry, in so far as they need be here noticed, are found in § 1, ch. 28 of the Laws of 1917; p. 76, amendatory of the previous law, as follows:

"Each workman who shall be injured whether upon the premises or at the plant, or, he being in the course of his employment, away from the plant of his employer, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with the following schedule, and, except as in this act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." See Rem. Comp. Stat., § 7679.

Subdivision (a) of the schedule, made part of that section, provides for death claims payable to the family or dependents of the workman losing his life in the course of his employment without any reference whatever to claims payable to the workman for injuries not resulting in his death. Subdivision (b) of the schedule, made part of that section, provides for claims payable to the workman for permanent total disability suffered in the course of his employment. Subdivision (c) of the schedule, made part of that section, provides for death claims payable to the family or dependents of the workman when the workman dies "during the period of permanent total disability, whatever the cause of. death." Subdivision (d) of the schedule, made part of that section, provides for claims payable to the workman "when the total disability is only temporary." Subdivision (f) of the schedule, made part of that section, provides for claims payable to the workman for "permanent partial disability." It was under this subdivision that the six hundred dollars award was made by appellant to Vogler, but not consummated by payment prior to his death which resulted from a cause entirely apart from the injury

resulting in his permanent partial disability. Subdivision (g) of the schedule, made part of that section, provides for claims payable to the workman for "further accident" suffered by him after an award made to him for a previous injury. Subdivision (h) of the schedule, made part of that section, provides for readjustment of an award to a workman upon "aggravation, diminution, or termination of disability" for which a previous award has been made to him.

We do not see in any of the provisions of this section, or elsewhere in the workmen's compensation law as existing at the time Vogler was injured, any suggestion of legislative intent to award any compensation to the family or dependents of a workman for any injury he may suffer in the course of his employment, other than in subdivision (c) above noticed, relating to death following total disability after an award made to him for such disability; unless, as is argued by counsel for respondent, such legislative intent is to be found in the above quoted introductory paragraph of the section preceding the lettered subdivisions of the schedule therein above noticed.

It is argued that the words "or his family or dependents in case of death of the workman", preceded by the words "each workman who shall be injured", found in the introductory paragraph of the section, make his family or dependents, following his death, the direct beneficiaries of any unpaid claim he may justly have against the accident fund before his death. This argument proceeds apparently upon the theory that the words, "or his family or dependents in case of death of the workman," refer to every possible award which is allowable under the following lettered subdivisions, not only for the workman's death, but also for his injury which does not result in his death. It seems to

us it could be as well argued that the words, "each workman who shall be injured", refer to every possible award which is allowable, not only for the workman's injury which does not result in his death, but also for his death. It seems quite plain to us that the words, "each workman who shall be injured", have reference only to claims which are allowable to him under the following subdivisions of the schedule of the section which refer to claims which are payable to him; and that the words, "or his family or dependents in case of death of the workman", have reference only to claims payable to the workman's family or dependents on account of his death mentioned in the subdivisions of the schedule of the section. In other words, the legislature did not intend, by the law as then existing, to award to anyone but the workman himself any compensation for injuries not resulting in his death, and did intend to award to his family and dependents compensation for his death, either as the direct result of his injury, or, as provided by subdivision (c) above noticed, for his death occurring during the period of his total disability; that is, while the workman lives, he is entitled to the award payable on account of his injury, and upon his death, under the conditions specified in the law, his family or dependents are allowed compensation, not for his injury for which he himself is entitled to an award, but for his death.

These observations, it seems to us, call for the conclusion that respondent is not entitled to the six hundred dollars award made to her former husband, Vogler; because such right did not survive to her as held in the *Ray* case above cited; and because the law does not, either in terms or inferentially, as we read it, award to her such compensation; though, as we shall

presently see, it does award to her compensation for the death of Vogler, her former husband.

We next inquire as to respondent's rights with reference to her claim of compensation under our workmen's compensation law for the death of her former husband, Joseph Vogler. This calls for an answer to the question as to whether or not he lost his life in the course of an extra hazardous employment so exclusively within the scope of Federal admiralty jurisdiction as to render our workmen's compensation law inapplicable to whatever right of recovery she may have for his death.

It seems too plain to admit of serious controversy that it is the legislative intent, expressed in our workmen's compensation law, that "shipbuilding", in which work Vogler was employed when he lost his life, shall be within the scope of that law in so far as Federal admiralty jurisdiction and maritime law will permit. In § 7674, Rem. Comp. Stat. [P. C. § 3469], specifying the extra hazardous employments within the scope of that law, we read:

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as being, inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extrahazardous' wherever used in this act, towit: . . . shipbuilding operations; . . ."

There is, it must be conceded, a field occupied so exclusively by general Federal maritime law that the rules of which, with reference to that field, cannot be locally impaired by any state legislation. Speaking

generally, we think it may be safely said that when there is drawn in question a claim of right or obligation arising out of a purely maritime tort, a purely maritime employment or a purely maritime contract, such claim must be determined by the rules of the uniform Federal maritime law, regardless of any state legislation which may, in terms, seem to provide otherwise. Nor can state legislation impose upon an employer any obligation to contribute to a fund to pay awards under a workmen's compensation law, unless it affords protection to the employer as against claims of workmen or their dependents payable out of the fund to which the employer is compelled to contribute. This court has, in effect, recognized this principle in the following cases: *State ex rel. Jarvis v. Daggett,* 87 Wash. 253, 151 Pac. 648, L. R. A. 1916A 446; *Shaughnessy v. Northland Steamship Co.,* 94 Wash. 325, 162 Pac. 546, Ann. Cas. 1918B 655; *Puget Sound Bridge & Dredging Co. v. Industrial Ins. Comm.,* 105 Wash. 272, 177 Pac. 788; *Lund v. Griffiths & Sprague Stevedoring Co.,* 108 Wash. 220, 183 Pac. 123; *State v. Dawson & Co.,* 122 Wash. 572, 211 Pac. 724, 212 Pac. 1059, all dealing with the rights of purely maritime employees to sue in the courts for injuries received, or the liability of employers to contribute to the accident fund under our workmen's compensation law because of having in their employ persons engaged in purely maritime service. But none of these holdings, we think, as will presently appear, are controlling of our problem here for solution, since the employment here drawn in question is not of that character that falls so exclusively within admiralty jurisdiction, or the general maritime law, as to prevent local state legislation from becoming of controlling effect with reference to the obligations and rights of such em-

ployers and employees, and the families and dependents of the latter.

We have seen that, when Vogler lost his life in the course of his employment, he was working upon an uncompleted ship, aiding in its construction. It is true that the ship had then been launched into the navigable waters of the United States, but it was still uncompleted and was not yet ready for the entering upon its maritime career. It had as yet no direct relation to commerce or navigation. It has become the settled law that a contract for the building of a ship, or for the furnishing of supplies or work incident thereto, is not a maritime contract; and that libel of the ship in a Federal admiralty court is not an available remedy to claimants of compensation for material or work furnished in its construction, though furnished after its launching and while resting in navigable waters of the United States. It was so decided in the light of previous Federal court holdings in *Thames Towboat Co. v. The Francis McDonald,* 254 U. S. 242; the court there observing as follows:

"The libel was dismissed for want of jurisdiction and the cause is here on that question only.

"Seeking to recover for alleged supplies furnished and repairs made to the schooner 'Francis McDonald' appellant libeled the vessel in United States District Court, Southern District of New York.

"Under a definite contract the Palmer Shipbuilding Company began contsruction of the schooner at Groton, Connecticut, and launched the hull. That company found itself unable to proceed further, thereupon appellant agreed with the owner to complete the work and for such purpose the hull was towed to its yard at New London. While lying there in the stream the materials, work and labor for which recovery is now sought were furnished. Later the vessel, so advanced, was towed to Hoboken and finished by a third com-

pany. When received by appellant the schooner was manifestly incomplete—her masts were not in, the bolts and beams and gaff were lying on deck, the forward house was not built, and she was not 'in condition to carry on any service.' Appellant worked on her for six weeks, and thirty or forty more days were required to finish her.

"Was appellant's contract to furnish the materials, work and labor for her completion, made after the schooner was launched but while yet not sufficiently advanced to discharge the functions for which intended, within the admiralty and maritime jurisdiction? The District Court thought not and so do we.

"Under decisions of this court the settled rule is that a contract for the complete construction of a ship or supplying materials therefor is non-maritime and not within the admiralty jurisdiction. *People's Ferry Co. v. Beers,* 20 How. 393; *Roach v. Chapman,* 22 How. 129; *Edwards v. Elliott,* 21 Wall. 532; *The Winnebago,* 205 U. S. 354, 363; *North Pacific S. S. Co. v. Hall Bros. Co.,* 249 U. S. 119, 125.

"Notwithstanding possible and once not inappropriate criticism, the doctrine is now firmly established that contracts to construct entirely new ships are non-maritime because not nearly enough related to any rights and duties pertaining to commerce and navigation. It is said that in no proper sense can they be regarded as directly and immediately connected with navigation or commerce by water. *Edwards v. Elliott,* 21 Wall. 532, 554, 555; *The William Windom,* 73 Fed. Rep. 496; *Pacific Surety Co. v. Leatham & Smith Towing Co.,* 151 Fed. Rep. 440. And we think the same reasons which exclude such contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended."

Is this not all but conclusive that neither the general Federal admiralty jurisdiction nor maritime law prevents our workmen's compensation law from having

full force and effect and becoming controlling of the
rights and obligations of workmen and employers en-
gaged as Vogler and his employer were engaged in the
construction of this ship? We think so, unless it must
be held otherwise because of the single fact that the
unfinished ship had been launched and was resting in
the navigable waters of the United States at the time
Vogler lost his life thereon in the course of his em-
ployment.

The later decision of the Federal supreme court in
*Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469,
as viewed by the still later decision of that court in
*State Industrial Commission v. Nordenholt Corpora-
tion,* 259 U. S. 263, seems to answer in the affirma-
tive the inquiry as to whether or not a state
workmen's compensation law becomes exclusively
controlling of an injured workman's rights under the
same circumstances in substance as are here involved.
In the *Rohde* case, there was drawn in question the
claimed right of Rohde to recover in admiralty in the
Federal court, damages claimed to have been suffered
by him as the result of the negligence of his employer,
Grant Smith-Porter Company, while working as a
carpenter aiding in the construction of an uncompleted
ship after it had been launched and while resting in
the navigable waters of the United States. He was
denied recovery in admiralty because of the exclusive
features of the Oregon workmen's compensation law
awarding him compensation from the fund created un-
der that law, in lieu of his right to seek recovery from
his alleged negligent employer in the courts. On ap-
peal of the case to the circuit court of appeals for the
ninth circuit, from a judgment rendered in favor of
Rohde by the district court, there were certified by the
circuit court to the Federal supreme court two ques-

tions asking instructions with reference thereto. After stating the facts as above summarized, the supreme court answered the questions so submitted, as follows:

"The contract for constructing 'The Ahala' was non-maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce. *Thames Towboat Co. v. The Schooner 'Francis McDonald'*, 254 U. S. 242. The injury was suffered within a State whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. *Union Fish Co. v. Erickson*, 248 U. S. 308. Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations. *Southern Pacific Co. v. Jensen*, 244 U. S. 205; *Western Fuel Co. v. Garcia, ante,* 233.

"The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled. *Waring v. Clarke*, 5 How. 441, 459; *Philadelphia, Wilmington & Baltimore R. R. Co. v. Philadelphia Towboat Co.*, 23 How. 209, 215; *The Propeller Commerce*, 1 Black, 574, 579; *The Plymouth*, 3 Wall. 20, 33; *Leathers v. Blessing*, 105 U. S. 626, 630; *Martin v. West*, 222 U. S. 191, 197. See *Atlantic Transport Co. v. Imbrovek*, 234 U. S. 52, 59; and Hughes on Admiralty, 2d ed., p. 195.

"The Workmen's Compensation Law of Oregon declares that when a workman subject to its terms is accidently injured in the course of his employment he

'shall be entitled to receive from the Industrial Accident Fund thereby created the sum or sums hereinafter specified and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury or death . . .'

"In *Western Fuel Co. v. Garcia, supra,* we recently pointed out that, as to certain local matters regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by state statutes. The present case is controlled by that principle. The statute of the State applies and defines the rights and liabilities of the parties. The employee may assert his claim against the Industrial Accident Fund to which both he and the employer have contributed as provided by the statute, but he can not recover damages in an admiralty court.

"This conclusion accords with *Southern Pacific Co. v. Jensen,* 244 U. S. 205; *Chelentis v. Luckenbach S. S. Co.* 247 U. S. 372; *Union Fish Co. v. Erickson,* 248 U. S. 308; and *Kickerbocker Ice Co. v. Stewart,* 253 U. S. 149. In each of them the employment or contract was maritime in nature and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity. Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential.

"As pointed out in *The Ira M. Hedges,* 218 U. S. 264, 270, 'there sometimes is difficulty in distinguishing between matters going to the jurisdiction and those determining the merits.' The certified questions are not wholly free from uncertainty of that nature and we therefore state our view of their real intendment.

"Construing the first question as meaning to inquire whether the general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction when

lying on navigable waters within a State, we answer, yes.

"Assuming that the second question presents the inquiry whether in the circumstances stated the exclusive features of the Oregon Workmen's Compensation Act would apply and abrogate the right to recover damages in an admiralty court which otherwise would exist, we also answer, yes."

While this is a holding that the general admiralty jurisdiction extends to such a case of claimed damages as for tort, it is also a holding that such admiralty jurisdiction is not so exclusive as to prevent the Oregon workmen's compensation law from becoming applicable and exclusively controlling of the rights of Rohde growing out of his injury there in question, even though his claim was founded on tort, and in the absence of the Oregon workmen's compensation law he would have been entitled to so recover; since the employment involved was of such a local nature as to permit local law to become applicable without working material prejudice to the general maritime law in so far as that law is, under the constitution of the United States, required to be uniform in its rules and operation throughout the United States.

Some contention is made that the language of the decision in the *Rohde* case, above quoted, lends support to the view that it was rested wholly upon the nature of the contract between Rohde and his employer, apart from the nature of the employment; that is, that their contract being made with reference to the Oregon workmen's compensation law, the contract became the sole source and support of the employer's contention that Rohde had no right of recovery in the courts.

If this argument be sound, then the contract of employment could be rendered effective to destroy

Rohde's right of recovery in admiralty and confer jurisdiction upon a state tribunal, even if Rohde's employment had been of such a pure maritime nature as to make the admiralty jurisdiction over the question of his right to recover for injury exclusive; that is, the contract would in effect confer jurisdiction upon a state tribunal which would have no jurisdiction over the subject matter.

These considerations, we think, call for the conclusion that, while the contract was made with reference to the Oregon workmen's compensation law and in contemplation of that law governing Rohde's rights in case of his injury, the real support of his employer's contention that Rohde must look to compensation under that law is the law itself; just as any law with reference to which a contract can be lawfully made and is made, becomes the real support of claims made under the contract, in so far as the enforcibility of the contract is concerned. The contract of employment manifestly was not one looking to the submission to mere arbitration of any controversy that might arise over Rohde's right to compensation for any injury he might suffer in the employment; but was made looking to the submission of any such controversy to a tribunal which had, by virtue of positive law, jurisdiction over the subject matter, and by virtue of the employment contract jurisdiction over the parties. We think the decision in the *Rohde* case, in so far as it makes reference to Rohde's contract of employment and the implied agreement therein, by silence of both parties, not to take their relations out from under the Oregon workmen's compensation law, this being the law's prescribed mode of election, means nothing more than this. We think it hardly possible that the court intended to hold that Rohde and his employer could, by their con-

tract alone, effectually confer jurisdiction over the subject matter in question upon the state tribunal, nor even by their contract submit their persons to the jurisdiction of the state tribunal unless the state tribunal did in fact have by law jurisdiction over the subject matter; which jurisdiction the decision evidently means the state tribunal did have because such jurisdiction did not trench upon that exclusive admiralty jurisdiction and maritime law which must be uniform throughout the United States.

We are reminded by counsel of our reference in our decision in *State v. Dawson & Co.*, 122 Wash. 572, 211 Pac. 724, 212 Pac. 1059, to the fact that our workmen's compensation law is compulsory, while that of Oregon drawn in question in the *Rohde* case was elective. Such observation was made by us, however, with reference to the question of the liability of Dawson & Company to contribute to the accident fund under our law, for the payment of injury claims of purely maritime employees. While that observation seemed to then lend support to the conclusion there reached, it was not indispensable to that conclusion; since under no circumstance could the purely maritime employment there in question be brought under a state workmen's compensation law. The following decisions lend support to the view that, whether a state workmen's compensation law be compulsory or elective is of no consequence in determining the applicability and controlling force of such a law to the question of whether an injured employee is required to look to the compensation thereby provided, or, whether he may sue in the courts as for tort, when it is once determined that he is under the law, whether he come under it by his own election or be forced under it by its terms. *Netherlands American Steam Nav. Co. v. Gallagher*, 282 Fed. 171;

*Duart v. Simmons,* 231 Mass. 313, 121 N. E. 10; *North Alaska Salmon Co. v. Pillsbury,* 174 Cal. 1, 162 Pac. 93; *Los Angeles Shipbuilding & Drydock Co. v. Industrial Accident Comm.,* 57 Cal. App. 352, 207 Pac. 416; *Bockhop v. Phoenix Transit Co.,* 117 Atl. (N. J.) 624.

We are of the opinion that respondent is not entitled to be paid from the accident fund the six hundred dollars award made to her former husband and not consummated by payment prior to his death; but that she is entitled to the award for his death as adjudged by the superior court. So, as to the former, the judgment of the superior court is reversed and the ruling of appellant thereon is affirmed; and as to the latter, the judgment of the superior court reversing the ruling of appellant is affirmed.

MAIN, C. J., and FULLERTON, J., concur.

TOLMAN, J. (dissenting)—I concur so far as the judgment of the superior court is affirmed, but dissent as to the reversal in part of that judgment.

PEMBERTON, J., concurs with TOLMAN, J.