[Nos. 20214, 20215.   Department One.   December 3, 1926.]

ECLIPSE MILL COMPANY, *Appellant*, v. DEPARTMENT OF
LABOR AND INDUSTRIES *et al., Respondents.*

SULTAN RAILWAY & TIMBER COMPANY, *Appellant, v.*
DEPARTMENT OF LABOR AND INDUSTRIES
*et al., Respondents.*[1]

[1] MASTER AND SERVANT (20-2)—WORKMEN'S COMPENSATION ACT—
FEDERAL LIABILITY ACT—STATE OR ADMIRALTY JURISDICTION—WORK
ON NAVIGABLE WATERS.  Loggers and lumbermen employed to
prepare logs for rafting and booms, and to break up rafts and
booms after reaching their destination, are engaged in "logging"
and "lumbering" within the workmen's compensation act, and
within state jurisdiction, and not maritime work, although the
rafting and booming is on a navigable stream, where their work
is all done before and after the actual transportation of the
logs, and, though maritime in character, pertains to local matters
with no direct relation to navigation and commerce.

Consolidated appeals from judgments of the super-
ior court for Thurston County, Wilson, J., entered
July 6, 1926, in favor of the defendants, upon sustain-
ing demurrers to complaints in actions to enjoin the
department of labor and industries from enforcing
compliance with the workmen's compensation act.  Af-
firmed.

*D. V. Halverstadt,* for appellants.

*The Attorney General* and *M. H. Wight, Assistant,*
for respondents.

FULLERTON, J.—These are separate appeals, consoli-
dated by an order of this court for the purpose of
hearing.  Each of the appellants employs workmen
who work in extra-hazardous occupations as that term
is defined in the state workmen's compensation act.

[1]Reported in 251 Pac. 130.

Certain of these workmen the appellants did not list on their payrolls furnished the department of labor and industries, whose duty it is to enforce the provisions of the act mentioned. The department ordered them so to do, and threatened them with the penalties of the act, in the case they refused to comply with the order. Actions were then begun by each of the appellants separately, in the superior court of Thurston county, seeking to enjoin the department from enforcing the order. To the complaints of the appellants, general demurrers were interposed which the trial court sustained. The appeals are from judgments of dismissal, entered after the appellants had elected to stand on their complaints.

There is no contention that the occupations in which the workmen were engaged are not extra-hazardous; the controversy is over the question whether the occupations are within the provisions of the workmen's compensation act.

As the causes were determined in the court below on general demurrers, the facts must be gathered from the allegations of the complaint. With reference to the character of the work in which the workmen of the appellant, Sultan Railway & Timber Company, were engaged, the pertinent allegations are as follows:

"III. That for a number of years last past plaintiff has been and now is the owner of a large body of timber in the state of Washington, and cutting said timber and selling the logs therefrom. That during said time it has been engaged in dumping such logs so produced in the Snohomish river, which at all of said times was and now is a navigable body of water of the United States, flowing through Snohomish county, into the waters of Puget Sound, and at all times hereinafter mentioned said Snohomish river was a body of navigable water upon and over which with its connections, commerce by water was, and now is, being

carried on between points in the state of Washington and other points of the United States, and foreign countries. That such logs have been and now are so dumped into the waters of Snohomish river for the purpose of booming, sorting, and rafting the same while so located in the said Snohomish river, preparatory to causing the same to be towed over the waters of such Snohomish river and other navigable waters of the United States to the mills of the purchasers thereof, that for the purpose of booming and rafting such logs, while so located in the water of said Snohomish river, plaintiff hires and for a number of years last past has hired employees whose duties continually require them to be upon such logs and on the navigable waters of said Snohomish river for the purpose of making such logs into rafts preparatory to causing them to be towed over such navigable waters of the United States to the purchasers thereof. That said rafts or booms of logs are made up by using a number of logs which are permanently chained together and permanently used for holding the logs together, and that the men in working upon these booms frequently use and are required to use these permanent boom sticks to stand on.''

With reference to the character of the work in which the workmen of the appellant, Eclipse Mill Company, were engaged, the allegations are as follows:

''III. That the business of the plaintiff corporation is now, and continuously for a number of years last past, has been operating a sawmill for the manufacture of logs into lumber, which mill is located on the Snohomish river, a navigable body of water of the United States, flowing through Snohomish county into the waters of Puget Sound; and at all times hereinafter mentioned said Snohomish river was a body of navigable water upon and over which, with its connections, commerce by water was, and now is, being carried on between points in the state of Washington and other points of the United States, and foreign countries.

"IV. That the logs which are cut into lumber at plaintiff's said mill are towed thereto in booms, upon the waters of said Snohomish river, which booms are anchored at said mill while in the navigable waters of said Snohomish river; and logs from such booms are moved therefrom to said mill for cutting, by means of a conveyor operated by a spike endless chain, operating throughout the length of said conveyor. That the lower end of said conveyor extends into the navigable waters of said Snohomish river. That to transfer logs from said booms to said conveyor, plaintiff hires and for a number of years last past has hired employees, called boom men, whose duties continuously require them to be upon such rafts of logs while on the navigable waters of the Snohomish river for the purpose of breaking up such rafts, and also employees, called slip men, whose duties likewise continuously require and have required them to be upon such navigable waters of the Snohomish river, for the purpose of guiding such logs from such rafts to the said conveyor. That said rafts or booms of logs are made up by using a number of logs which are permanently chained together, and that the men in working upon these booms frequently use and are required to use these permanent boom sticks to stand on."

From these allegations it will be seen that, while the workmen of each of the appellants work upon navigable waters, they do not actually engage in the work of navigation; that is to say, neither set of workmen transports the logs from one place on such navigable waters to another. The work of the first set is to prepare the logs for transportation; their work ends at the point where actual transportation begins. The work of the second set begins at the point where transportation ends; their work is to break up the rafts after the rafts have reached their destination, and float the logs singly or in groups to the reach of the conveyor by means of which the logs are taken from the navigable waters into appellant's mill.

Turning to our workmen's compensation act, it is at once plain that the legislature intended it to apply to all cases of employment, where the work is extra-hazardous, which are within the legislative jurisdiction of the state. The act expressly so declares, and among the employments specially enumerated in the act as coming within its provisions are "logging" and "lumbering". The work in which these workmen are engaged manifestly falls within these terms, as they are commonly and generally understood. It must follow, therefore, that, if the work is within the legislative jurisdiction of the state, the workmen are within the terms of the act, and their employers are bound to contribute to the fund from which injuries occurring to the workmen in the prosecution of the work are compensated. But it is equally plain that, if the work is not within the legislative jurisdiction of the state, the act is without application, and their employers are not bound to so contribute. The state legislature cannot    .

" . . . impose upon an employer any obligation to contribute to a fund to pay awards under the workmen's compensation law, unless it affords protection to the employer as against claims of workmen or their dependents payable out of the fund to which the employer is compelled to contribute." *Zahler v. Department of Labor and Industries*, 125 Wash. 410, 217 Pac. 55.

[1] The controlling question, therefore, is, is the work in which these workmen are engaged within the legislative jurisdiction of the state. The question is one we have not found easy of solution. Nor is it one upon which we can pronounce a determinative judgment. It involves the law maritime, over which the highest federal court has plenary and final jurisdiction, and it is to the decisions of that court that we must look for the governing rules. The decisions, we shall not

analyze.  Generally, it can be said that it is the settled
doctrine of that court that any work performed by
workmen upon navigable waters, no matter what may
be its character, is essentially maritime in its nature,
and controlled by the principles of admiralty. A further
settled rule is that, in contract matters, admiralty
jurisdiction depends upon the nature of the transac-
tion, and, in tort matters, upon locality.  *Southern Pa-
cific Co. v. Jensen,* 244 U. S. 205; *Clyde Steamship Co.
v. Walker,* 244 U. S. 255; *Chelentis v. Luckenbach
Steamship Co.,* 247 U. S. 372; *Knickerbocker Ice Co. v.
Stewart,* 253 U. S. 149; *Western Fuel Co. v. Garcia,*
257 U. S. 233; *Gonsalves v. Morse Dry Dock Co.,* 266
U. S. 171.

The general rules here announced would seem to
control the question against the contention that the
work of the workmen here involved is within the legis-
lative jurisdiction of the state, but the court cited has
announced an exception to these general rules which
materially affects their application.  It has held that,
where the employment, although maritime in its char-
acter, pertains to local matters, having no direct rela-
tion to navigation .and commerce, the maritime law
"might be modified or supplemented" by state stat-
utes, since the regulation would "work no material
prejudice to any characteristic feature of the general
maritime law, or interfere with the harmony or uni-
formity of that law in its international or interstate
relations." In *Western Fuel Co. v. Garcia,* 257 U. S.
233, the exception was applied to a state death statute.
In that case, it appeared that a citizen and resident of
California was instantly killed while employed in. the
hold of a Norwegian vessel.  An admiralty suit *in
personam* was instituted against his employer for
damages, in which it was charged that the death was
the result of the negligence of the employer.   There

was a state statute giving a right of action for death by wrongful act, and, because of this statute, a recovery was allowed in the United States district court in which the action was instituted. The cause was appealed to the circuit court of appeals, from which court it was sent to the supreme court by the direction of the latter court. The case was reversed because the district court refused to hold that the suit was barred by the statute of limitations, but, concerning the right to maintain the suit, this language was used:

"It is established doctrine that no suit to recover damages for the death of a human being caused by negligence, may be maintained in the admiralty courts of the United States under the general maritime law. At the common law no civil action lies for an injury resulting from death. The maritime law as generally accepted by maritime nations leaves the matter untouched and in practice each of them has applied the same rule for the sea which it maintains on land. *The Harrisburg,* 119 U. S. 204, 213; *The Alaska,* 130 U. S. 201, 209; *La Bourgogne (Deslions v. La Compagnie Generale Transatlantique),* 210 U. S. 95.

"How far this rule of non-liability adopted and enforced by our admiralty courts in the absence of an applicable statute may be modified, changed or supplemented by state legislation has been the subject of consideration here but no complete solution of the question has been announced. . . .

"As the logical result of prior decisions we think it follows that, where death upon such waters results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given. The subject is maritime and local in character and the specified modification of or supplement to the rule applied in admiralty courts, when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with

the proper harmony and uniformity of that law in its international and interstate relations. *Southern Pacific Co. v. Jensen*, 244 U. S. 205.''

In *Grant Smith-Porter Ship Co. v. Rohde*, 257 U. S. 469, the principle was applied to a workman on an incompleted vessel, after the vessel had been launched and was in navigable waters. The workman was injured because of the negligence of his employer, and instituted a libel *in personam* against his employer for damages. The injury occurred in the state of Oregon, which state had a workmen's compensation law applicable to hazardous occupations, with which the employer had complied by paying into the accident fund created by the law the specified payments, which included deductions made from the wages of the workmen. Two questions were submitted to the supreme court, first, whether the admiralty jurisdiction extended to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction, when lying within the navigable waters within a state; and, second, ''whether in the circumstances stated the exclusive features of the Oregon workmen's compensation act would apply and abrogate the right to recover damages in an admiralty court which otherwise would exist.'' The court answered both questions affirmatively, stating with reference to the latter, that:

''Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential.''

It might be thought that, because the parties had contracted with reference to the state statute, it had a controlling influence in the mind of the court, but the court, in subsequent decisions, re-stated the ground of

its conclusion, resting it upon the sole ground that the application of the state law would work no material prejudice to the characteristic features of the general maritime law. See, *Great Lakes Dredge & Dock Co. v. Kierejewski,* 261 U. S. 479; *Millers' Indemnity Underwriters v. Braud,* 270 U. S. 59, 46 Sup. Ct. 194.

The latter case is instructive, also, on the question now under consideration. In that case the workman was, while employed as a diver, submerged from a floating barge, anchored in a navigable stream some thirty-five feet from the bank of the stream, for the purpose of sawing off timbers from an abandoned set of ways which had become an obstruction to navigation. While thus submerged the air supply failed, and he died of suffocation. The courts of Texas affirmed an award made under the workmen's compensation law of that state, and the case was taken to the supreme court of the United States on writ of error, where the judgment of the Texas court was affirmed. In its decision, the supreme court, after pointing out that matters which are not of mere local concern, because of their relation to commerce and navigation, are beyond the regulatory powers of the state, again affirmed the rule that, as to local matters which will work no material prejudice to the general maritime law, the rules of the latter may be modified or supplemented by state statutes. In the course of the opinion this language was used:

"In the cause now under consideration the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state compensation act; but the matter is of mere local concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law. The act prescribes the only remedy; its exclusive

features abrogate the right to resort to the admiralty court which otherwise would exist.''

The workmen's compensation acts the court had under consideration in these cases are no more exclusive than our own. Indeed, if there be a difference in this respect, ours is the more exclusive. Not only is it compulsory rather than elective, but, by express declaration, it withdraws from private controversy and from the jurisdiction of the courts all controversies arising over the right to compensation for personal injuries received by a workman in an extrahazardous occupation. Its exclusive features are further exemplified by the fact that it expressly declares that it is intended to apply "to all such inherently hazardous works and occupations, and it is its purpose to embrace all of them, which are within the legislative jurisdiction of the state." (Rem. Comp. Stat., § 7674) [P. C. § 3469]

Measured by the test the authoritative court has laid down, it is our opinion that the workmen here under consideration are within the terms of the workmen's compensation act, and that their employers are liable to contribute to the accident fund as required by the act. Manifestly, it seems to us, that the work in which the workmen are engaged is purely local in its nature, that it has no direct relation to commerce or navigation, and that its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law, nor interfere with the harmony or uniformity of that law in its international or interstate relations. These being the circumstances, in the language of the last of the cited cases, "The act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist." And from this it follows that, since the workmen injured in the work

may resort to the fund for compensation for their injuries, their employers are obligated to contribute to the fund.

The judgments of the lower court are affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and MITCHELL, JJ., concur.