[No. 25477.   Department One.   March 8, 1935.]

DEWEY FISH COMPANY, *Respondent*, v. THE DEPARTMENT
OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General, Browder Brown, Assistant,*
and *Edward S. Franklin,* for appellant.

*Altha P. Curry* and *H. A. Martin,* for respondent.

TOLMAN, J.—By this action, the right of the depart-
ment of labor and industries to classify the construc-
tion and maintenance of fish traps in the waters of
Puget Sound as being subject to the workmen's com-
pensation act and to collect premiums based upon the
payrolls of the workmen so employed is challenged.

[1]Reported in 41 P. (2d) 1099.

The trial court ruled against the department, and this appeal followed.

The facts are not now in dispute, and may best be stated by quoting from the findings made by the trial court:

"The court finds that the appellant, Dewey Fish Company, was a licensed holder of certain fish trap sites located in the inland waters of Puget Sound at varying distances from the shore, and that it is necessary for the season's operations that new traps be constructed on these sites each year and that, in the construction of these traps, it is necessary to drive piling into the bed of the sea, capping the piles, and thereafter hang webbing upon them and service them until the end of the season.

"That in the construction of appellant's fish traps, two scows were used, one a non-power driven pile driver scow called the 'Driver Dewey' upon which twelve men were employed whose primary duty was to perform the necessary functions incident to the driving of piles into the bed of the sea at a maximum depth of not exceeding sixty-five (65) feet. That the 'Driver Dewey' is registered in the Bureau of Navigation, Department of Commerce, U. S. No. 171240. That there was also a non-power driven capping scow with four men aboard whose duty consisted of capping the piles after they had been driven. That thereafter the crews of both scows hung the webbing on the driven piles. That, after the piles were driven and the traps completed, the men remained aboard the scows for the balance of the season, going from trap to trap for the purpose of keeping the traps in repair.

"That during the course of construction of appellant's traps, which operation was performed in the spring of the year, the scows were towed by a power-driven tug chartered by appellant for that purpose, and that the tug would tow the scows to the scene of the operation, remain in attendance during the course of the day's work, and then return the scows to a sheltered harbor for the night. That the employees

aboard the scows were not subject to the jurisdiction of the master of the tug, but were under the supervision of the pile driver foreman. That they are treated as seamen by the United States government, in that they are sent to the United States Marine Hospital in case of accident; and that they are housed, fed and perform their duties during the season's operations on board the scows; and that the scows were towed an average distance of approximately twenty-five to thirty-five miles per day over the navigable waters of Puget Sound and subject to the hazards of the sea.

"That appellant's operation in placing and driving the traps was subject to obtaining a license from the state fisheries board, which limited the area and depth to which the traps might be driven, and that for each trap location a license is required by the United States Engineer's office of the War Department of the United States.

"That on or about August 29, 1933, the supervisor of industrial insurance determined the above described operation of the appellant to be subject to the provisions of the workmen's compensation act and demanded the payment of premiums from January 1, 1933, to June 30, 1933, in the sum of $1,020.29, and for the month of July, 1933, in the sum of $113.91, which action was sustained by the joint board on appeal, and that the cashier of the appellant without the knowledge of appellant's officers, paid the July assessment under protest to the state."

From these findings, the trial court drew the following conclusion:

"That the action of the Supervisor of Industrial Insurance in determining the above described operations of the Dewey Fish Company to be subject to the provisions of the workmen's compensation act was erroneous, and that the action of the joint board of the department of labor and industries in sustaining such order should be overruled, and that the appellant should be adjudged not to come within the provisions of the workmen's compensation act, and that the ap-

pellant.is entitled to have refunded to it the sum of $113.91 paid as aforesaid, and to recover its costs and disbursements and attorney fee in the sum of $75.00.''

The errors assigned are directed to the conclusion of law alone, and raise the single legal question of whether these operations are maritime in their nature and are covered and governed exclusively by admiralty law; or whether, on the contrary, these operations are so far local in character as to permit the department to assume jurisdiction without material prejudice to or interference with the uniformity of admiralty law.

█ Under the well-established rule, as we understand it, even though the operations be maritime in their nature and the contract of employment be considered a maritime contract, still if the operations and the employment have no direct relation to commerce and navigation, and are local in character and such as will not interfere with the uniformity rule, the state may assume jurisdiction. *Southern Pacific Co. v. Jensen,* 244 U. S. 205, 37 S. Ct. 524, Ann. Cas. 1917E, 900; *State Industrial Commission of New York v. Nordenholt Corporation,* 259 U. S. 263, 42 S. Ct. 473, 25 A. L. R. 1013; *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, 42 S. Ct. 157, 25 A. L. R. 1008; *Miller's Indemnity Underwriters v. Braud,* 270 U. S. 59, 46 S. Ct. 194; *Sultan Railway & Timber Co. v. Department of Labor and Industries,* 277 U. S. 135, 48 S. Ct. 505.

In order to clarify and simplify, let us consider of what the operations consist.

█ Appellant contends, with a show of reason, that the operations should be, and logically must be, divided into two distinct parts. First, the towing and transporting of the scows over the inland waters of Puget Sound to and from the trap sites. This operation does, of course, involve navigation; and all who

are engaged in this operation are engaged in navigation. The department has never asserted any right to bring under the industrial insurance act any workmen who are so employed. The workmen engaged solely in trap building and maintenance have nothing whatever to do with this operation in any active way or form whatsoever. During all of the navigation and all of the movement of the scows, these workmen are but passive passengers, submitting to being moved with the scows to and from the place where their duties are performed.

We are not now concerned with what the rights of these men would have been if injured while they were being transported as such passengers, and therefore the case of *Spencer Kellogg & Sons, Inc., v. Hicks,* 285 U. S. 502, seems to have no bearing upon the present question.

The second part of the operations begins only when the first ends, and when the scows have come to rest and are anchored at the place where the pile driving and like work is to be performed. Then, and then only, do the workmen here involved begin to perform their labor. The labor which they then perform while the scows are at rest is the work which the appellant contends is essentially local in character, and this is the work which it asserts has no relation whatever to navigation or commerce. Upon this point, appellant places great reliance upon the case of *Miller's Indemnity Underwriters v. Braud,* 270 U. S. 59, 46 S. Ct. 194.

In that case, the court, speaking of the workman, said:

"While employed as a diver by the National Ship Building Company, he submerged himself from a floating barge anchored in the navigable Sabine River thirty-five feet from the bank, for the purpose of sawing off the timbers of an abandoned set of ways, once

used for launching ships, which had become an obstruction to navigation. While thus submerged the air supply failed and he died of suffocation. . . .

"Plaintiff in error insists that the claim arose out of a maritime tort; that the rights and obligations of the parties were fixed by the maritime law; and that the State had no power to change these by statute or otherwise. . . .

"In the cause now under consideration the record discloses facts sufficient to show a maritime tort to which the general admiralty jurisdiction would extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its regulation by the State will work no material prejudice to any characteristic feature of the general maritime law. The Act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist.

"We had occasion to consider matters which were not of mere local concern because of their special relation to commerce and navigation, and held them beyond the regulatory power of the State, in *Great Lakes Dredge & Dock Co. v. Kierejewski*, 261 U. S. 479; *Washington v. Dawson & Co.*, 264 U. S. 219; *Gonsalves v. Morse Dry Dock Co.*, 266 U. S. 171; and *Robins Dry Dock Co. v. Dahl*, 266 U. S. 449, 457."

The Federal supreme court is, of course, the final arbiter upon what is, or is not, work of a local nature; and we must look to the decisions of that court for our guidance. In *Southern Pacific Co. v. Jensen*, 244 U. S. 205, 37 S. Ct. 524, Ann. Cas. 1917E, 900, in passing upon a state act, it was said:

"In view of these constitutional provisions and the federal act it would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That this may be done to some extent cannot be denied."

The court then laid down the rule to be applied in determining the manner and the extent of the permis-

sible invasion of admiralty law by state legislation in these words:

"And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

Without citing or analyzing the many cases since decided, we think that the supreme court has continued to adhere to the rule announced.

In our own case of *Eclipse Mill Co. v. Department of Labor and Industries*, 141 Wash. 172, 251 Pac. 130, involving workmen employed upon navigable waters in booming and rafting logs preparatory to towing, we said:

"From these allegations it will be seen that, while the workmen of each of the appellants work upon navigable waters, they do not actually engage in the work of navigation; that is to say, neither set of workmen transports the logs from one place on such navigable waters to another. The work of the first set is to prepare the logs for transportation; their work ends at the point where actual transportation begins. The work of the second set begins at the point where transportation ends; their work is to break up the rafts after the rafts have reached their destination, and float the logs singly or in groups to the reach of the conveyor by means of which the logs are taken from the navigable waters into appellant's mill. . . .

"The controlling question, therefore, is, is the work in which these workmen are engaged within the legislative jurisdiction of the state. The question is one we have not found easy of solution. Nor is it one upon which we can pronounce a determinative judgment. It involves the law maritime, over which the highest federal court has plenary and final jurisdiction, and it is to the decisions of that court that we must look for the governing rules. . . .

"The general rules here announced would seem to control the question against the contention that the work of the workmen here involved is within the legislative jurisdiction of the state, but the court cited has announced an exception to these general rules which materially affects their application. It has held that, where the employment, although maritime in its character, pertains to local matters, having no direct relation to navigation and commerce, the maritime law 'might be modified or supplemented' by state statutes, since the regulation would 'work no material prejudice to any characteristic feature of the general maritime law, or interfere with the harmony or uniformity of that law in its international or interstate relations.' "

Then, after reviewing the authorities at length, we held:

"Measured by the test the authoritative court has laid down, it is our opinion that the workmen here under consideration are within the terms of the workmen's compensation act, and that their employers are liable to contribute to the accident fund as required by the act. Manifestly, it seems to us, that the work in which the workmen are engaged is purely local in its nature, that it has no direct relation to commerce or navigation, and that its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law, nor interfere with the harmony or uniformity of that law in its international or interstate relations. These being the circumstances, in the language of the last of the cited cases, 'The act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist.' And from this it follows that, since the workmen injured in the work may resort to the fund for compensation for their injuries, their employers are obligated to contribute to the fund."

This case went to the Federal supreme court, *Sultan Railway & Timber Co. v. Department of Labor and*

*Industries,* 277 U. S. 135, 48 S. Ct. 505, and, in affirming our judgment, that court said:

"The plaintiff in one suit is conducting logging operations, a part of which consists in putting sawlogs into booms, after they have been thrown into a navigable river, so that they conveniently may be towed elsewhere for sale. The men are employed in the booming work. The plaintiff in the other suit conducts a saw mill on the bank of a navigable river. Logs are towed in booms to a point adjacent to the mill and then anchored. The booms afterwards are taken apart and the logs are guided to a conveyor extending into the river and then drawn into the mill for sawing. The men are employed in taking apart the booms and guiding the logs to the conveyor. In both instances the place of work is on navigable water —in one it is done before actual transportation begins and in the other after the transportation is completed.

"It is settled by our decisions that where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity. *Grant Smith-Porter Co. v. Rohde,* 257 U. S. 469; *Miller's Indemnity Underwriters v. Braud,* 270 U. S. 59; *Alaska Packers Association v. Industrial Accident Commission,* 276 U. S. 467.

"We think the order in question as applied to the situations disclosed comes within that rule."

It may be cheerfully admitted that the facts in the last case cited are not exactly parallel, and that there is room for the argument, at least, that this case is distinguishable; but no case has been found with facts so similar as to resolve our doubts.

If we correctly grasp the meaning of what has been quoted from *Millers' Indemnity Underwriters v. Braud, supra,* and *Sultan Railway & Timber Co. v.*

*Department of Labor and Industries, supra,* those cases point out the course which we are disposed to follow. Hence, we are constrained to hold that the humane and beneficent purposes of our industrial act are such as to require the state to apply it to all within the limits of its territorial jurisdiction, except only those who clearly are, by law, excluded.

It appearing that the workmen involved have nothing whatever to do with navigation; that their work is confined to building and maintaining fish traps founded in the earth beneath the waters; that, at most, such work has only an incidental relation to navigation and commerce; and that bringing them within the act will work no material prejudice to the general admiralty law or interfere with its uniformity; we find it incumbent upon us to hold that the workmen are within the act, and that the employer must contribute to the fund.

Reversed, with directions to enter a judgment in conformity with the views herein expressed.

MILLARD, C. J., MAIN, BEALS, and GERAGHTY, JJ., concur.