[No. 25912. *En Banc.* August 7, 1936.]

ROBERT COMAR, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*L. B. Sulgrove,* for respondent.

GERAGHTY, J.—The respondent sustained a minor injury while engaged in unloading crushed rock from a barge on Hood Canal. His claim for compensation was denied by the department of labor and industries, upon the ground that the injury was sustained while he was engaged in an off-shore occupation, not under the protection of the state workmen's compensation act. On appeal to the superior court, the department was reversed, and judgment entered directing the department to pay the respondent the sum of one hundred forty dollars, with costs. The trial court found:

[1]Reported in 59 P. (2d) 1113.

"That said plaintiff was employed on the shore, and a portion of the time upon the barge; that the employment and occupation of the plaintiff at the time he received his injury pertained solely to local matters having no direct relation to navigation and commerce."

The respondent's employer had a contract with the state to deliver crushed rock to storage dumps along a state highway. The rock was transported from a point near Charleston, on barges, to Hoodsport, on Hood Canal, where it was transferred into bunkers on shore, to be thereafter delivered by trucks to the place of use. In unloading, a clamshell shovel, operated from the shore, was used. When the cargo became low or scattered, it was necessary for workmen to go upon the deck and gather the rock into piles so that it could be taken up by the shovel. A part of the duties of the respondent was to go on the barge and assist in this operation. While so engaged, his shovel struck a protruding nail or bolt, causing an injury to his right forearm, the foundation of his claim before the department.

The contention of the department is that respondent's injury is covered by the provisions of the longshoremen and harbor workers' compensation act, 44 Stat. 1424, Title 33, U. S. C. A., § 901 et seq., and not within the protection of the state workmen's compensation act. We are concerned here, of course, only with the question whether the state law gives a remedy to the respondent. It may be taken for granted that the letter of the workmen's compensation act is broad enough to cover his case, if it is competent for the state to supply a remedy. The longshoremen's act provides:

"Compensation shall be payable under this chapter in respect of disability or death of an employee, but

only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. . . ." Title 33, U. S. C. A., § 903.

It will be seen that protection is afforded off-shore employees injured upon navigable waters of the United States, only where the state may not validly provide protection by its own laws. This leaves for solution, in any given case, the question whether the employment is of such character that the state may validly make its compensation act applicable thereto. In other words, is the employment such that, independently of the longshoremen's act, the state has such jurisdiction as will sustain the application of its compensation law to employees engaged in maritime work?

In *Zahler v. Department of Labor & Industries*, 125 Wash. 410, 217 Pac. 55, we said:

"There is, it must be conceded, a field occupied so exclusively by general Federal maritime law that the rules of which, with reference to that field, cannot be locally impaired by any state legislation. Speaking generally we think it may be safely said that when there is drawn in question a claim of right or obligation arising out of a purely maritime tort, a purely maritime employment or a purely maritime contract, such claim must be determined by the rules of the uniform Federal maritime law, regardless of any state legislation which may, in terms, seem to provide otherwise. Nor can state legislation impose upon an employer any obligation to contribute to a fund to pay awards under a workmen's compensation law, unless it affords protection to the employer as against claims of workmen or their dependents payable out of the fund to which the employer is compelled to contribute. [Citing cases] . . . all dealing with the rights of purely maritime employees to sue in the courts for injuries received, or the liability of employers to con-

tribute to the accident fund under our workmen's compensation law because of having in their employ persons engaged in purely maritime service.''

In the recent case of *Dewey Fish Co. v. Department of Labor & Industries,* 181 Wash. 95, 41 P. (2d) 1099, it is said:

''Under the well-established rule, as we understand it, even though the operations be maritime in their nature and the contract of employment be considered a maritime contract, still if the operations and the employment have no direct relation to commerce and navigation, and are local in character and such as will not interfere with the uniformity rule, the state may assume jurisdiction.''

The court there quotes from *Southern Pac. Co. v. Jensen,* 244 U. S. 205, 37 S. Ct. 524, Ann. Cas. 1917E, 900, the rule to be applied in determining the manner and the extent of the permissible invasion of admiralty law by state legislation:

''And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.''

In the *Dewey Fish Co.* case, we held that workmen engaged solely in driving piles for the construction of fish traps, had nothing whatever to do with navigation:

''Their work is confined to building and maintaining fish traps founded in the earth beneath the waters; that, at most, such work has only an incidental relation to navigation and commerce; and that bringing them within the act will work no material prejudice to the general admiralty law or interfere with its uniformity; . . .''

A similar conclusion was reached in the case of *Eclipse Mill Co. v. Department of Labor & Industries,*

141 Wash. 172, 251 Pac. 130, involving workmen employed upon navigable waters in floating logs for formation into rafts, preparatory to towing. This case, with its companion case, *Sultan R. & T. Co. v. Department of Labor & Industries, Id.,* involving the handling of logs after the raft had reached its destination and been broken up, was affirmed by the supreme court of the United States in *Sultan R. & T. Co. v. Department of Labor & Industries,* 277 U. S. 135, 48 S. Ct. 505.

The respondent contends that the present case is controlled in his favor by the *Dewey* and *Sultan* cases, but we think there is an essential distinction between the facts in those cases and in the one before us. The employment involved in the former cases had no direct relation to commerce and navigation and was so local in character as not to interfere with the uniform rule; while in this case, the employment of respondent in unloading a barge was a maritime transaction not of purely local concern, within the holding of the United States supreme court.

In *Employers' Liability Assurance Corp. v. Cook,* 281 U. S. 233, 50 S. Ct. 308, a regular employee of the Ford Motor Company, open for any kind of work, was instructed, as part of his contract of employment, to assist in unloading a steamship then tied up at dock at Houston, Texas. While at work in the hold of the vessel, he sustained a fatal injury. The Ford Motor Company carried a policy of workmen's compensation insurance with the assurance corporation, in accordance with the provisions of the workmen's compensation act of Texas. The personal representative of the employee presented a claim to the industrial accident board for compensation because of his death. The claim was denied and suit brought, which, by transfer to the Federal courts, reached the circuit court of ap-

peals for the fifth circuit, and ultimately, the supreme court. The circuit court of appeals held:

"We think it fairly can be said that the matter of unloading these two ships of the Ford Motor Company at rare intervals was 'of mere local concern, and its regulation by the state will work no material prejudice to any . . . feature of the general maritime law.' " 31 F. (2d) 497.

The supreme court, in reversing the circuit court, said:

"Whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do is not important. The unloading of a ship is not matter of purely local concern as we have often pointed out. Under the circumstances disclosed the State lacked power to prescribe the rights and liabilities of the parties growing out of the accident."

In *Baizley Iron Works v. Span,* 281 U. S. 222, 50 S. Ct. 306, in reversing the supreme court of Pennsylvania, which had held the state compensation law applicable in the case of an employee injured while painting angle irons, as part of the necessary repairs in the engine room of a vessel, tied to a pier, the court said:

"The insistence in behalf of appellee Span is that when hurt he was doing work of a nature which had no direct relation to navigation or commerce; and to permit application of the State Workmen's Compensation Act would work no material prejudice to the essential features of the general maritime law as in *Grant Smith-Porter Co. v. Rohde,* 257 U. S. 469. But so to hold would conflict with principles which we have often announced. *Great Lakes Dredge & Dock Co. v. Kierejewski,* 261 U. S. 479, 480, 481; *Gonsalves v. Morse Dry Dock & Repair Co.,* 266 U. S. 171, 172; *Robins Dry Dock Co. v. Dahl,* 266 U. S. 449, 457; *Messel v. Foundation Co.,* 274 U. S. 427, 434; *Northern Coal & Dock Co. v. Strand,* 278 U. S. 142, 144.

"What work has direct relation to navigation or

commerce must, of course, be determined in view of surrounding circumstances as cases arise.''

In the course of this opinion, the court had occasion to refer to *Sultan R. & T. Co. v. Department of Labor & Industries, supra,* characterizing the operations involved there as having relation to the nature of the occupations of men engaged in logging.

In *Southern Pac. Co. v. Jensen,* 244 U. S. 205, 37 S. Ct. 524, Ann. Cas. 1917E, 900, the railroad company operated a steamship between New York and Galveston. An employee of the company was killed while engaged in unloading a ship at a pier in the North river, New York harbor. The court held that the New York workmen's compensation act could not constitutionally govern the case of one so injured upon navigable waters while engaged in maritime service, holding that the state statute attempted to give a remedy unknown to the common law, incapable of enforcement by the ordinary processes of any court, and was not saved to suitors from the grant of exclusive jurisdiction to the Federal courts.

In *Nogueira v. New York, N. H. & H. R. Co.,* 281 U. S. 128, 50 S. Ct. 303, there was involved the right of an employee injured on a float belonging to the railroad company. The float was a vessel used in the transportation of railroad cars, and at the time of injury, lying in navigable waters at a pier in the East river, New York harbor. The employee was engaged by the railroad company as one of a gang of freight handlers in loading freight into cars on the float. He was injured while using a hand truck in carrying a bale of paper over a plank running from the dock to the float at a steep incline. The contention was made that the car float was used as an adjunct of railroad transportation in interstate commerce, and that it was

not the intention of Congress to substitute the remedy under the longshoremen's act for that of the Federal employers' liability act. The court held that the car float, being in navigable waters, was subject to the maritime law as much as any other vessel, and, since the injury was within the exclusive admiralty and maritime jurisdiction, as much as was the employee in *Southern Pac. Co. v. Jensen, supra,* recovery for the injury through "workmen's compensation proceedings" could not "validly be provided by state law."

In *State Industrial Com. v. Nordenholt Corp.,* 259 U. S. 263, 42 S. Ct. 473, 25 A. L. R. 1013, a longshoreman was injured on a dock while engaged in unloading a vessel. It was decided that, in such a case, where the injury took place on an extension of the land, the maritime law did not prescribe the liability and the local law had always governed. The state workmen's compensation law was accordingly held to be applicable.

In the language of Chief Justice Hughes in the *Nogueira* case, *supra:*

"The distinction was thus maintained between injuries on land and those which were suffered by persons engaged in maritime employment on a vessel in navigable waters."

This distinction is further illustrated in the recent case of *Minnie v. Port Huron Terminal Co.,* 295 U. S. 647, 55 S. Ct. 884, where a longshoreman was injured by a blow received from a swinging crane, while unloading a vessel lying in navigable waters. He was struck while on the deck of the vessel and precipitated to the wharf. In holding that the case was covered by the maritime law, the court, speaking through the chief justice, said:

"It was that blow received on the vessel in navigable water which gave rise to the cause of action, and the maritime character of that cause of action is not al-

tered by the fact that the petitioner was thrown from the vessel to the land.''

Continuing, the court refers to the case of *Smith & Son v. Taylor,* 276 U. S. 179, 48 S. Ct. 228, as illustrating the converse of the case then before the court, saying:

''There a longshoreman, employed in the unloading of a vessel at a dock, was standing upon a stage that rested solely upon the wharf and projected a few feet over the water to or near the vessel. He was struck by a sling loaded with cargo, which was being lowered over the vessel's side and was knocked into the water, where some time later he was found dead. It was urged that the suit was solely for the death which occurred in the water and hence that the case was exclusively within the admiralty jurisdiction. We held the argument to be untenable. We said: 'The blow by the sling was what gave rise to the cause of action. It was given and took effect while deceased was upon the land. It was the sole, immediate and proximate cause of his death. . . . The substance and consummation of the occurrence which gave rise to the cause of action took place on land.' ''

In the *Nogueira* case, the court held that a car float in navigable waters was subject to the maritime law like any other vessel. So here, the barge, although towed, was a vessel within the maritime law. That the cargo carried was crushed rock, rather than coal, iron, or merchandise, made the operation no less a maritime one, exclusively under Federal jurisdiction and not within the protection of the state workmen's compensation act.

In the recent case of *Puget Sound Bridge & Dredging Co. v. Department of Labor & Industries,* 185 Wash. 349, 54 P. (2d) 1003, where the liability of an employer for the payment of industrial insurance premiums was involved, it was said:

"From these decisions, it is clear that, primarily, the criterion by which it is to be determined whether the claim of an injured workman comes under admiralty jurisdiction or under a state compensation act is the *place where* the injury was sustained. If the injury occurs on navigable water, the rights of the workman and the liability of his employer are to be determined by maritime law. If he is injured on land, his rights are governed by the state compensation act, notwithstanding he may be engaged in maritime work."

The judgment of the trial court is accordingly reversed, and the cause remanded with direction to dismiss.

MAIN, MITCHELL, BEALS, BLAKE, TOLMAN, HOLCOMB, and STEINERT, JJ., concur.

MILLARD, C. J. (dissenting)—I dissent. The work in which respondent was engaged was necessarily local in character; it had only an incidental relation to navigation and commerce. The case at bar is not distinguishable in principle from *Eclipse Mill Co. v. Department of Labor & Industries*, 141 Wash. 172, 251 Pac. 130; *Sultan R. & T. Co. v. Department of Labor & Industries*, 277 U. S. 135, 48 S. Ct. 505, and other cases. The judgment should be affirmed.