[No. 205-40523-1.    Division One.    May 4, 1970.]
Panel 1

JOSEPH LEE CALDWELL, *Appellant*, v. YELLOW CAB SERVICE,
INC., *Respondent.*

*Schroeter & Jackson* and *Paul W. Whelan,* for appellant.

*McMullen, Brooke, Knapp & Grenier* and *E. H. Knapp,
Jr.,* for respondent.

JAMES, C. J.—Joseph Caldwell appeals from the entry of
a judgment summarily dismissing his suit against Yellow
Cab Service, Inc. Caldwell seeks damages for personal in-

juries he allegedly sustained in a fall on Yellow Cab's premises.

Yellow Cab advances two theories in support of the summary judgment. The first is that the cognizable evidence demonstrates that Caldwell was the employee of Yellow Cab and therefore barred by the Industrial Insurance Act from bringing a civil action against Yellow Cab.[1] Yellow Cab's second theory is that even if Caldwell was not an employee of Yellow Cab, he is estopped from maintaining this action because he applied for and received an industrial insurance award.

Yellow Cab submitted an affidavit signed by an individual who identified himself as the "superintendent" of the corporation. The affidavit in its entirety is as follows:

> The plaintiff, Joseph Lee Caldwell, was an employee of Yellow Cab Service, Inc., and in the scope of his employment at the time of his accident. He was covered by the Washington State Workmen's Compensation Act and has applied for and received the benefits due him under that act for the injuries he is suing for in this lawsuit. Copies of portions of the State Industrial file are attached showing the defendant is the plaintiff's employer — and that the plaintiff has received the benefits of the act.

Attached to the affidavit is a copy of a Department of Labor and Industries form entitled "Report of Accident (Part 1. Employer's Report)." The form was signed by a "manager" of Yellow Cab, and it names Yellow Cab Service, Inc., as Caldwell's employer. It states that the business of the employer is "Taxi" and that the occupation of the workman is "Driver." (Caldwell's occupation, taxicab driving, is classified as "extrahazardous" by RCW 51.12.010.) It

---

[1] ". . . The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided." RCW 51.04.010.

further reports that the period of employment has been 1 year and 9 months and that the workman's hours have been included in payrolls reported to the Department of Labor and Industries.

Copies of other forms attached to the affidavit indicate that Caldwell has been awarded time loss compensation for the injuries he received.

Although not included (apparently by oversight) in the agreed statement of facts as authorized by CAROA 34(4), Caldwell admits in his brief that he completed a "Workman's Report" form. The form, which is reproduced in Yellow Cab's brief, lists "Yellow Cab Co." as Caldwell's employer. Caldwell's signature appears below the statement, "I declare that the foregoing statements are true to the best of my knowledge and belief."

Yellow Cab made no other showing in support of its motion for summary judgment.

In his own affidavit in opposition to Yellow Cab's motion for summary judgment, Caldwell said,

That he is the plaintiff in the above-entitled action and that he commenced working with the Yellow Cab organization in August, 1963.

That he drove cab Number 99 and Number 168 and that he believed these cabs to be owned by Dick Furley. Whenever the cab broke down, he took the cab to Mr. Furley's garage for repair. Mr. Furley's garage is in an alley between Boylston and Broadway Streets, Seattle, Washington.

In conversation with Mr. Furley, he indicated that he paid the dispatcher and for gasoline and insurance.

The only thing in the cab that Mr. Furley did not fix in his garage were the meters, which had to be done in the meter shop.

I knew that the amount of money I took in, eventually went to Mr. Furley, although, it was turned in at the Yellow Cab Garage at 902 Madison, Seattle, Washington.

Yellow Cab Service, Inc. took out all the expenses for insurance, gas, dispatcher, etc. and the remainder went to Mr. Furley.

When I was working back in 1963, all the cabs including those I drove for Mr. Furley, used to have "DRIVER-OWNER" painted on their doors.

An affidavit of Caldwell's attorney states that in other litigation handled by his law firm, officers of Yellow Cab had admitted that its business is solely that of providing services to individual owners of taxicabs and that it has nothing to do with the operation of the cabs. Counsel's affidavit includes quotations from the depositions of the president and secretary of Yellow Cab to support this assertion.

Caldwell's showing in opposition to the motion for summary judgment would permit a finding that although Yellow Cab in some instances arranges for the hiring of drivers for the individual cab owners, it employs no drivers on its own account; that although it forwards industrial insurance premiums to the Department of Labor and Industries on behalf of the drivers, it does so as part of its services to the individual cab owners, charging the owners' accounts for industrial insurance just as it does for wages, social security, unemployment compensation, and income tax withholding.

Yellow Cab argues, citing *Loss v. DeBord*, 67 Wn.2d 318, 407 P.2d 421 (1965), that the affidavit of Caldwell's counsel may not be considered because it fails to comply with CR 56(e), which provides that

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissable in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits.

Specifically, Yellow Cab notes that the evidentiary facts stated in counsel's affidavit are not based upon his personal knowledge. For that reason, says Yellow Cab, the affidavit was entitled to no consideration in determining whether summary judgment should be entered.

■■ Counsel's affidavit, however, was merely a vehicle for bringing evidentiary facts to the record. It is true

that counsel had no testimonial knowledge of most of the material evidentiary facts presented in his own affidavit, but he stated under oath that officers of Yellow Cab had made sworn statements in pretrial depositions in connection with other litigation in which Yellow Cab was a party. Caldwell's counsel quoted in his affidavit the pertinent portions of the testimony elicited during the depositions. Inferences could be drawn from these statements to support Caldwell's contention that Yellow Cab employed no cab drivers whatever. Although Caldwell's counsel should have complied with CR 56(e) by attaching sworn or certified copies of the depositions incorporated into his affidavits, that defect was waived by Yellow Cab's failure to move to strike the material quoted in the affidavit. *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 431 P.2d 216 (1967).

■ Yellow Cab also stresses that the depositions of its president and secretary, from which Caldwell's counsel quotes liberally in his affidavit, were conducted prior to the time of Caldwell's accident. Without argument or citation of authority, Yellow Cab asserts that the testimony incorporated into counsel's affidavit "is therefore inadmissible because it is also irrelevant." Our examination of the record discloses that the testimony of the officers was given approximately 3 months prior to Caldwell's accident. It was obviously relevant.

■ As has frequently been reiterated by our Supreme Court, summary judgment procedures were devised to eliminate useless trials, but summary judgment may not be used to resolve genuine issues of material fact. The burden is on the movant to demonstrate that there is no genuine dispute as to any material fact, and all reasonable inferences from the evidence must be resolved against him. *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963).

We hold that Caldwell's showing in opposition to Yellow Cab's motion for summary judgment was sufficient to create a genuine issue of fact concerning the identity of Caldwell's true employer.

Yellow Cab's second contention is that even if Caldwell was *not* an employee of Yellow Cab, he is estopped in this action because of his industrial insurance award.

Findings of fact need not accompany an order granting summary judgment, *State ex rel. Carroll v. Simmons,* 61 Wn.2d 146, 377 P.2d 421 (1962), and none were made in this case. The trial judge did, however, explain his ruling in a memorandum opinion submitted to counsel by letter. The letter says,

> Between himself and the Department of Labor [Caldwell] represented to the Department of Labor that the Yellow Cab Service was his employer. He paid his premiums monthly on this basis. Because of his representation the Department accepted the Yellow Cab Service as the employer.
>
> [Caldwell] filed his claim with the Department representing the Yellow Cab Service as his employer. He accepted compensation in money from the Department. He cannot now be heard to say that because of the unusual arrangement of doing business that the Yellow Cab Service is not his employer.

The trial judge thus concluded that Caldwell's election to seek an award from the Department of Labor and Industries has estopped him from instituting a subsequent suit against Yellow Cab.

Yellow Cab cites no authority and makes no argument in support of the theory of estoppel. Clearly the basic elements of the doctrine are not present. Yellow Cab did not rely to its detriment upon Caldwell's initial decision to claim compensation under the act. See, *e.g., Nelson v. Bailey,* 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959); 28 Am. Jur. 2d *Estoppel & Waiver* § 35 (1966).

Neither can it be said that Caldwell "elected" in the sense that he deliberately chose one of two alternative remedies and is therefore irrevocably bound by his choice. RCW 51.24.010 expressly provides for the payment of industrial insurance benefits to an injured workman who has elected to proceed against a third party tort-feasor, subject only to the requirement that the workman refund any compensation received if he is successful in his civil action.

594

[T]he injured workman . . . electing to seek a remedy against [a third party tort-feasor], *shall receive benefits payable under this title as if such election had not been made,* and the department for the benefit of the accident fund and the medical aid fund to the extent of such payments having been made by the department to the injured workman . . . shall be subrogated to the rights of such person or persons against the recovery had from such third party and shall have a lien thereupon.

(Italics ours.) RCW 51.24.010.

The trial judge erred in granting the motion to dismiss upon the doctrine of estoppel.

The judgment of dismissal is reversed and the case remanded for trial. Should Caldwell eventually prevail against Yellow Cab, he may be required to account to the Department of Labor and Industries in keeping with RCW 51.24.010. Costs on this appeal will abide final disposition of the case.

SWANSON and UTTER, JJ., concur.