[No. 208-40618-1.    Division One.    May 18, 1970.]
Panel 2

THOMAS M. GARRISEY, *Appellant,* v. WESTSHORE MARINA ASSOCIATES *et al., Respondents.*

*Jackson, Ulvestad & Goodwin* and *Thor P. Ulvestad,* for appellant.

*Reed, McClure & Moceri, Hugh A. McClure,* and *Ronald J. Perey,* for respondents.

HOROWITZ, A. C. J.—Plaintiff, Thomas M. Garrisey, sued the defendants (Westshore), his employer, to recover damages for personal injuries sustained by him in the course of his employment while he was aboard a raft in Lake Union, a navigable lake located in Seattle. From a summary judgment in favor of the defendants, plaintiff appeals. The legal question presented is whether the Industrial Insurance Act (RCW Title 51) and the receipt by plaintiff of benefits thereunder precludes him from invoking the Jones Act remedy here asserted for negligence and for damages under the maritime doctrine of unseaworthiness.

During April, 1966, defendants, through Garrett & Mulliken (Garrett), undertook to erect a marina in Lake Union. In due course, the city of Seattle issued a building permit for the construction of the marina on a particular area of Lake Union shorelands pursuant to approved plans and specifications. The evidence describing the marina is somewhat sketchy. However, the undisputed evidence shows that the marina was built to float; was not anchored solid or piled in the ground; boats were to be moored in the marina in boat stalls; and the marina was to house some offices. Plaintiff was hired from Laborers Union Hall and paid by defendants to assist two carpenters in the marina construction. Garrett had built a raft on the construction site to transport materials from a dock to the marina site, the materials to be incorporated into the marina structure. A scaffolding was erected on the floor of the raft to hold these materials. The raft was not self-propelled. On April 7, 1966, the marina was still under construction and no boats were using the facility. On that date, lumber had been picked up from the dock and placed on the scaffolding on the raft for the purpose of being taken to the marina. While plaintiff was on the raft he was injured. The accident occurred when the plaintiff's side of the raft began to sink. According to the defendants' summary of the deposition testimony on

the point "as he tried to go through the scaffolding to the high side of the raft the whole scaffolding came over.", injuring him; and "that the raft or scow was actually along side the dock at the time the accident occurred."[1]

Westshore paid premiums under the Industrial Insurance Act as a covered employer. Plaintiff filed a claim for benefits under the Industrial Insurance Act, asserting he was engaged in extra-hazardous employment within the terms of the act. By an order dated July 6, 1967, the Department of Labor and Industries approved plaintiff's claim and awarded him benefits totaling $8,130.86 for time loss, compensation for total temporary disability, medical expenses, medical treatment and hospitalization. The department charged plaintiff's award against the account of employer Westshore.

█ The instant action was thereafter brought. The amended complaint alleged that plaintiff's injuries were caused by Westshore's negligence and the unseaworthiness of the "barge" on which plaintiff was employed at the time of the accident. In the summary judgment there is a recital reading:

> and both parties having further stipulated that the issue in the motion for summary judgment is whether or not plaintiff's activities at the time of the accident were of a local concern unconnected with commerce and navigation, . . .

The summary judgment then decrees:

> That there being no substantial issue of fact that the plaintiff's activities at the time of the accident were of a local concern unconnected with commerce and navigation and that plaintiff being an employee of Westshore

---

[1]The plaintiff's deposition has not been made part of the record on appeal. It should have been, because it is described in the summary judgment as a matter considered by the trial court. *Kataisto v. Low,* 73 Wn.2d 341, 438 P.2d 623 (1968). However, the accuracy of defendants' counsel's summary of portions of the deposition is not disputed nor did plaintiff move to strike the affidavit on the ground of inadmissible hearsay under CR 56(e). We, therefore, consider it. *Caldwell v. Yellow Cab Serv., Inc.,* 2 Wn. App. 588, 469 P.2d 218 (1970) and *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 431 P.2d 216 (1967).

Marina Associates engaged in extra-hazardous activity cannot sue his employer.

Plaintiff rested his case entirely upon the allegations of his pleadings, the amended complaint being verified only by plaintiff's attorney. The only showing of facts was that made on behalf of the defendants. Under these circumstances, the showing made by the defendants must be accepted as stating the established facts of the case. *W. G. Platts, Inc. v. Platts,* 73 Wn.2d 434, 438 P.2d 867 (1968); *Stringfellow v. Stringfellow,* 53 Wn.2d 639, 335 P.2d 825 (1959).[2]

We turn then to a consideration of whether under the admitted facts in this case, the court correctly determined as a matter of law that "plaintiff's activities at the time of the accident were of local concern unconnected with commerce and navigation, . . . " A proper understanding of the matter requires a short summary of applicable legal principles. The nature and history of the remedies now available to an injured maritime employee against his employer have been much considered; *e.g.,* G. Gilmore & C. Black, Law of Admiralty, ch. 6 (1957); 1 E. Benedict, American Admiralty, chs. 4, 5, 15, 16 (6th ed. 1940); M. Norris, Maritime Personal Injuries (2d ed. 1959).[3]

[2]The determination, or motion for summary judgment under CR 56(c) of whether there is any "genuine issue of material fact" depends on the showing, if any, made, and not on the complaint, even if the complaint alone involves a potential factual dispute. *Lundgren v. Kieren,* 64 Wn.2d 672, 393 P.2d 625 (1964) at 677-678. In the instant case, the stipulation on the record made left only a question of law.

[3]In S. Kolius & E. Vickery, *Maritime Employees, Remedies Against Employers,* 23 Ark. L. Rev. 192 (1969), it is pointed out *inter alia*: If he seeks workmen's compensation benefits, he should consider (1) the workmen's compensation act of a state; (2) the federal Longshoremen's and Harborworkers' Compensation Act (33 U.S.C. §§ 901-50 (1964), originally enacted as Act of March 4, 1927, ch. 509, 44 Stat. 1424 and extended by the Admiralty Extension Act, 46 U.S.C. § 740, 62 Stat. 496, enacted June 19, 1948), sometimes referred to as Longshoremen's Act; (3) federal Outer Continental Shelf Lands Act (43 U.S.C. §§ 1331-43 (1964), originally enacted as Act of August 7, 1953, ch. 345, 67 Stat. 462). If a maritime worker is a seaman, he may seek relief under (1) the Jones Act enacted in 1920 (46 U.S.C. § 688 (1964)) for employer's negligence; (2) the maritime doctrine of unseaworthiness (whether or

To determine the remedy available, an injured maritime employee must determine whether his claim for relief calls for a remedy concerning (1) activity within exclusive maritime and admiralty jurisdiction (*Southern Pac. Co. v. Jensen*, 244 U.S. 205, 37 S. Ct. 524, 61 L. Ed. 1086 (1917); *Lindgren v. United States*, 281 U.S. 38, 50 S. Ct. 207, 74 L. Ed. 686 (1930));[4] in which case a state workmen's compensation act such as the Industrial Insurance Act remedy can have no application; (2) activity within exclusive state jurisdiction in which case a state workmen's compensation act remedy such as the Industrial Insurance Act applies (RCW Title 51) (*W. R. Grace & Co. v. Department of Labor & Indus.*, 178 Wash. 4, 33 P.2d 659 (1934)); (3) activity of maritime but "local concern" permitting operation of a state workmen's compensation act such as Washington's Industrial Insurance Act (*Millers' Indem. Underwriters v. Braud*, 270 U.S. 59, 46 S. Ct. 194, 70 L. Ed. 470 (1926); *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A.L.R. 1008 (1922); *Lahti v. Terry & Tench Co.*, 240 N.Y. 292, 148 N.E. 527 (1925), *rev'd sub nom.*, *State Industrial Bd. v. Terry &*

not the result of negligence) stemming from the absolute warranty of the shipowner to maritime workers doing traditional seamen's work to provide a seaworthy vessel; and (3) the general maritime rights to transportation, wages, maintenance and cure which stem from the seaman's contract of employment and exist irrespective of negligence. See also, *Michigan Mut. Liab. Co. v. Arrien*, 233 F. Supp. 496 (S.D.N.Y. 1964).

[4]Washington has many illustrations of class (1) cases including *State ex rel. Jarvis v. Daggett*, 87 Wash. 253, 151 P. 648 (1915); *Shaughnessy v. Northland S.S. Co.*, 94 Wash. 325, 162 P. 546 (1917); *Puget Sound Bridge & Dredging Co. v. Industrial Ins. Comm'n*, 105 Wash. 272, 177 P. 788 (1919); *State v. W. C. Dawson & Co.*, 122 Wash. 572, 211 P. 724, 212 P. 1059, 31 A.L.R. 512 (1922); *McClure v. Wilson*, 147 Wash. 119, 265 P. 485 (1928); *Puget Sound Bridge & Dredging Co. v. Department of Labor & Indus.*, 185 Wash. 349, 54 P.2d 1003 (1936); *Comar v. Department of Labor & Indus.*, 187 Wash. 99, 59 P.2d 1113 (1936). A case may be a class (1) case after express determination that the "local concern" doctrine is inapplicable. *Comar v. Department of Labor & Indus.*, 187 Wash. 99, 59 P.2d 1113 (1936); See *McClure v. Wilson*, 147 Wash. 119, 265 P. 485 (1928).

*Tench Co.*, 273 U.S. 639, 47 S. Ct. 90, 71 L. Ed. 817 (1926));[5] (4) activity within the "twilight zone"; that is, when it is doubtful whether a case falls within class (1) or class (3).[6]

---

[5]Other Supreme Court cases include *Calbeck v. Travelers Ins. Co.*, 370 U.S. 114, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962); *Alaska Packers Ass'n v. Industrial Accident Comm'n*, 276 U.S. 467, 48 S. Ct. 346, 72 L. Ed. 656 (1928). There are many cases dealing expressly or in effect with the "local concern" doctrine which recognize state law as the law governing the remedy for the injury involved, including *Zahler v. Department of Labor & Indus.*, 125 Wash. 410, 217 P. 55 (1923); *Scott v. Department of Labor & Indus.*, 130 Wash. 598, 228 P. 1013 (1924); *Eclipse Mill Co. v. Department of Labor & Indus.*, 141 Wash. 172, 251 P. 130 (1926), *aff'd.* 277 U.S. 135; *W. R. Grace & Co. v. Department of Labor & Indus.*, 178 Wash. 4, 33 P.2d 659 (1934); *Dewey Fish Co. v. Department of Labor & Indus.*, 181 Wash. 95, 41 P.2d 1099 (1935); *Puget Sound Bridge & Dredging Co. v. Department of Labor & Indus.*, 185 Wash. 349, 54 P.2d 1003 (1936); *Rohlfs v. Department of Labor & Indus.*, 190 Wash. 566, 69 P.2d 817, 56 A.L.R. 352 (1937). Out of state cases include *Cordova Fish & Cold Storage Co. v. Estes*, 370 P.2d 180 (Alas. 1962); *Zubik v. Bethlehem Steel Co.*, 18 A.2d 441 (Pa. 1941); *Beadle v. Massachusetts Bonding & Ins. Co.*, 87 So.2d 339 (La. 1956); *In re Herbert's Case*, 283 Mass. 348, 186 N.E. 554 (1933); *Sikes v. Fort Myers Constr. Co.*, 191 So.2d 265 (Fla. 1966); *Toland's Case*, 258 Mass. 470, 155 N.E. 602 (1927); *Belk v. Massman Constr. Co.*, 133 Neb. 303, 275 N.W. 76 (1937). See generally, 3 A. Larson, Workmen's Compensation § 89.23, pp. 410, 411 (1968); 1 E. Benedict, American Admiralty § 127 p. 351 (6th ed. 1940); M. Norris, Maritime Personal Injuries, §§ 144-146 (2d ed. 1966). If the "local concern" doctrine is held not to apply, the case falls within class (1), note 4, *supra*; *Valley Towing Co. v. Allen*, 236 Miss. 51, 109 So. 2d 538 (1959).

[6]The "twilight zone" doctrine arose in determining the jurisdictional problem as between the Longshoremen's and Harborworkers' Compensation Act on the one hand, note 3, and Washington Industrial Insurance Act on the other, *Davis v. Department of Labor & Indus.*, 317 U.S. 249, 63 S. Ct. 225, 87 L. Ed. 246 (1942), reversing *Davis v. Department of Labor & Indus.*, 12 Wn.2d 349, 121 P.2d 365 (1942); *cf., Hahn v. Ross Island Sand & Gravel Co.*, 358 U.S. 272, 79 S. Ct. 266, 3 L. Ed. 2d 292 (1959). The "local concern" or "twilight zone" doctrine, or both, have also been held applicable as exceptions to the application of the Jones Act, note 3, so as to make applicable a state workmen's compensation act, although the case authority is divided. Applying the exception, see *Cordova Fish & Cold Storage Co. v. Estes*, 370 P.2d 180 (Alas. 1962); *Johnson v. George J. Waldie Towing Co.*, 25 App. Div. 2d 537, 267 N.Y.S. 2d 536 (1966); *Woods v. Merrill-Stevens Dry Dock & Repair Co.*, 14 F. Supp. 208 (S.D.Fla. 1936); *Fuentes v. Gulf Coast Dredging Co.*, 54 F.2d 69 (5th Cir. 1931); *cf., Kibadeaux v. Standard Dredging Co.*, 81 F.2d 670, 672 (5th Cir., 1936), *cert den.* 299 U.S. 549, 57 S. Ct. 12, 81 L. Ed. 404 (1936); *Beadle v. Massachusetts Bonding & Ins. Co.*, 87 So.2d

*Davis v. Department of Labor & Indus.*, 317 U.S. 249, 63 S. Ct. 225, 87 L. Ed. 246 (1942), reversing *Davis v. Department of Labor & Indus.*, 12 Wn.2d 349, 121 P.2d 365 (1942). In a class (2) case, the remedy of the Industrial Insurance Act is mandatory as to all employees engaged in extra-hazardous occupations (RCW 51.12.100 and RCW 51.12.070) and elective as to other occupations (RCW 51.12.110). The remedy of the injured workman subject to the act is exclusive (RCW 51.04.010). In a class (4) case, if the injured maritime employee avails himself of the Industrial Insurance Act remedy instead of an alternative Longshoremen's Act or Jones Act remedy, he is bound by his election as to coverage both by the statute making the remedy exclusive and by the doctrine of election described in *Davis v. Department of Labor & Indus., supra.*[7]

---

339 (La. 1956). Refusing to recognize the exceptions, see *Gahagan Constr. Corp. v. Armao*, 165 F.2d 301 (1st Cir. 1948), *cert. den.* 333 U. S. 876, 68 S.Ct. 905, 92 L. Ed. 1152 (1948); *cf.*, *Valley Towing Co. v. Allen*, 236 Miss. 51, 109 So. 2d 538 (1959); *cf.*, *Harney v. William M. Moore Bldg. Corp.*, 359 F.2d 649 (2d Cir. 1966), discussed in *Braadt v. New York*, 260 F. Supp. 826, 828 (S.D.N.Y. 1966). See 3 A. Larson, Workmen's Compensation §§ 90.00-90.41 (1968).

[7]If the application of a workmen's compensation act is at the employee's election, and he elects to avail himself of the benefits of such act, he is precluded from later availing himself of a maritime remedy for the injury sustained. See *The Fred E. Sander*, 212 F. 545 (W.D.Wash. 1914), discussed in *Shaughnessy v. Northland S.S. Co.*, 94 Wash. 325, 162 P. 546 (1917); *Belk v. Massman Constr. Co.*, 133 Neb. 303, 275 N.W. 76 (1937). The New York Workmen's Compensation Act expressly permits payment for a maritime injury sustained by an employee if he, his employer and insurance carrier waive their admiralty rights and remedies. Workmen's Compensation Law § 113, Consol. Laws of N.Y. (McKinney 1965). The employee's acceptance of workmen's compensation award accordingly constitutes a waiver of his otherwise existing maritime remedies under the Jones Act and for unseaworthiness. *Braadt v. New York*, 260 F.Supp. 826 (S.D.N.Y. 1966); *Schacht v. Nicolaisen*, 283 App. Div. 902, 129 N.Y.S.2d 871 (1954); *Johnson v. George J. Waldie Towing Co.*, 25 App. Div.2d 537, 267 N.Y.S.2d 536 (1966). There is no express waiver provision in the Washington Industrial Insurance Act similar to that of the New York Act; *cf.*, RCW 51.12.100. However, for the reasons stated in the text of this opinion, the application of the Industrial Insurance Act to the injuries here and the voluntary acceptance of the benefits of the act would preclude him from pursuing the maritime remedy claimed if otherwise available.

Plaintiff contends that the instant case falls within class (1). Defendants contend that the instant case falls within class (3) or (4). If plaintiff is correct, and in light of the stipulation, plaintiff is not barred from relief under the Jones Act for negligence or on account of the maritime doctrine of unseaworthiness; whereas, if the defendants are correct, plaintiff is barred. The cases are divided on the question whether the "local concern" and "twilight zone" doctrines are exceptions to the application of the Jones Act. See note 6.

■ The "local concern" doctrine suggested in *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 37 S. Ct. 524, 61 L. Ed. 1086 (1917), is so generally stated[8] as to require a definition of "local concern" on a case-by-case basis. The same is true in applying the "twilight zone" doctrine because that doctrine necessarily embraces the "local concern" doctrine without requiring a determination whether the federal or state remedy applies. *Michigan Mut. Liab. Co. v. Arrien,* 233 F. Supp. 496 (S.D.N.Y. 1964). The number of "local concern" cases is too long to set out in detail. Many are listed in note 5, *supra.* In 3 A. Larson, Workmen's Compensation § 89.22, p. 411 (1968) illustrative "local concern" cases are summarized as follows:

removal of a submerged obstruction by a diver; building a pier from a floating raft; checking lumber on a barge; pushing a fishing boat into the water; making up logging booms in navigable water; working as sweeper on a garbage scow; and servicing a refrigerator in a ship's galley by a local refrigerator company.

■■ In the instant case the marina is a place to moor boats and the evidence so indicates. See *Des Moines v. Hemenway,* 73 Wn.2d 130, 437 P.2d 171 (1968). A marina is not a vessel. *Scituate v. Maxwell,* 339 Mass. 436, 159 N.E.2d

---

[8]The Supreme Court said in 244 U.S. 205, 216, 37 S. Ct. 524, 61 L. Ed. 1086 (1917): "no such [state workmen's compensation] legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

344 (1959). Its moorage function is similar to that of a dock or pier which is considered an extension of the land. See 1 E. Benedict, American Admiralty, § 128a (6th ed. 1940); cf., *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 89 S. Ct. 1835, 23 L. Ed. 2d 360 (1969); cf., *West v. Martin*, 51 Wash. 85, 97 P. 1102 (1908). Plaintiff's injuries here were sustained in the course of plaintiff's employment for the construction of a marina intended to be used for the moorage of boats in a navigable city lake and for office purposes. It is true that plaintiff was aboard a raft being used to move timber from the dock and for a short distance to the marina so that the timber could be incorporated in the marina structure. The activity was analogous to that of a laborer or carpenter who moves timber from a stockpile on land to a nearby construction site on land where the timber is to be incorporated into the structure. We do not think of such a movement of timber as an end in itself or as "transportation." It is merely an incident in the course of construction. The movement of lumber from the dock to the marina aboard the raft was not an activity in direct aid of commerce and navigation as, for example, in the case of the transportation of cargo. At best, it was but marginal in its direct relation to commerce and navigation. The circumstances disclosed by the record here fall within the factual pattern and principles of *Lahti v. Terry & Tench Co.*, 240 N.Y. 292, 148 N.E. 527 (1925), *rev'd sub nom. State Industrial Bd. v. Terry & Tench Co.*, 273 U.S. 639, 47 S. Ct. 90, 71 L. Ed. 817 (1926). The Supreme Court of the United States there held that a workman standing on a floating raft in navigable waters engaged in constructing a pier was subject to the New York Workmen's Compensation Act. The nature of the workman's activities rather than the place where the accident occurs determines into which class the workman's claim for relief falls. Accordingly, the "local concern" doctrine may apply even if the accident occurs on navigable water. *Puget Sound Bridge & Dredging Co. v. Department of Labor & Indus.*, 185 Wash. 349, 54 P.2d 1003 (1936).

Plaintiff cites *Comar v. Department of Labor & Indus.*,

187 Wash. 99, 59 P.2d 1113 (1936), as supporting his contention that the "local concern" doctrine is inapplicable. That case is distinguishable. There, a barge in navigable waters was engaged in transporting crushed rock to storage dumps along the state highway. The workman was injured while engaged in unloading crushed rock from that barge. His activity was directly related to commerce and navigation and does not fall within the "local concern" doctrine.

Plaintiff finally contends that summary judgment is inappropriate because a fact issue is presented whether the plaintiff is a seaman within the meaning of the Jones Act and whether the raft is a "vessel" within the meaning of 46 U.S.C. § 713 and 1 U.S.C. § 3. He cites cases including *Harney v. William M. Moore Bldg. Corp.*, 359 F.2d 649 (2d Cir. 1966). It would be necessary to pass upon the contention advanced only if, notwithstanding the "local concern" and "twilight zone" exceptions, this case continued to be one in which the Jones Act and the maritime doctrine of unseaworthiness remained applicable. We have pointed out that there is case support for the view that if the "local concern" or "twilight zone" exceptions apply, the state law is the measure of the plaintiff's recovery. Furthermore, the parties by their stipulation have in effect adopted the "local concern" doctrine as the controlling issue; *i.e.*, "whether or not plaintiff's activities at the time of the accident were of a local concern unconnected with commerce and navigation, . . . " The trial court answered the stipulated question in the affirmative. Plaintiff was, accordingly, bound by the Industrial Insurance Act remedy he had elected. Note 7, *supra*. Summary judgment for the defendants was then appropriate. *Johnson v. George J. Waldie Towing Co.*, 25 App. Div. 2d 537, 267 N.Y.S.2d 536 (1966); *Braadt v. New York*, 260 F. Supp. 826 (S.D.N.Y. 1966).

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.